FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

98 SEP 30  PM 12: 37

U.S. DISTRICT COURT
N.D. OF ALABAMA

JOHN W. PEOPLES, JR.,                          }
                                               }
        Petitioner,                            }
                                               }
v.                                             }        CASE NO. CV 94-B-2175-E
                                               }
TOMMY HERRING, Commissioner                    }
of the Alabama Department of                   }
Corrections, et al.,                           }        ENTERED
                                               }
        Respondents.                           }        SEP 3 0 1998

MEMORANDUM OPINION

Currently before the court is the petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254, filed by John W. Peoples, Jr.[1]  On December 7, 1983, petitioner was

convicted on five counts of capital murder in the Circuit Court of Talladega County, Alabama.

Petitioner was sentenced on January 27, 1984, to death by electrocution.  Petitioner's appeals

have been unsuccessful, and he filed this petition seeking habeas corpus relief on September 6,

1994.

I.      Factual[2] and Procedural History

        Paul Franklin, Sr., his wife Judy, and their ten-year-old son, Paul, Jr., lived near Pell

City in St. Clair County, Alabama, on a peninsula extending into Lake Logan Martin.  On the

night of July 6, 1983, they disappeared, and their bodies were eventually discovered in the

---

[1] The petition was filed by counsel who was subsequently appointed counsel pursuant to 21
U.S.C. § 848(g)(4)(B) and 18 U.S.C. § 3006A(a)(2)(B).

[2] A thorough recitation of the facts of the underlying case can be found in *Peoples v. State*,
510 So. 2d 554 (Ala. Crim. App. 1986), *aff'd*, 510 So. 2d 574 (Ala. 1987), *and cert. denied*, 484
U.S. 933 (1987).

early evening hours of July 13, 1983, in a wooded area just off of County Road 377 in Talladega County. The skulls of both Judy Franklin and Paul Franklin, Jr. had been crushed, and Judy Franklin had also been shot. The cause of death of Paul Franklin, Sr., was not immediately apparent, but he was found dead along with Judy and Paul, Jr.

Petitioner quickly became a suspect in the disappearance of the Franklins. Petitioner was found by Childersburg police trying to sell Paul Franklin's 1968 red Chevrolet Corvette, which had been reported missing along with the Franklins themselves. The petitioner's role in the disappearance of the Franklins developed over the next several days. Petitioner initially claimed that Paul Franklin had sold him the car. He admitted that he and his cousin Timothy Gooden had been to the Franklins' on the night of July 6, 1983, but he stated that he and Mr. Gooden had left the Franklins alive and well that evening. Petitioner subsequently stated that the Franklins were dead and that he knew where the bodies were located, but he still maintained that he was not responsible for their deaths. Petitioner then led authorities to the location of the bodies. Petitioner later confessed to having killed the Franklins, signing a written statement that said: "The case I am in I did do it. Concerning the Franklin family I did do it." *Peoples v. State*, 510 So. 2d 554, 561 (Ala. Crim. App. 1986), *aff'd*, 510 So. 2d 574 (Ala. 1987), *and cert. denied*, 484 U.S. 933 (1987). At some point, petitioner's name was found written in eyebrow pencil and hidden by toilet paper on the laundry hamper in one of the Franklins' bathrooms. Finally, petitioner eventually led sheriff's deputies to where he had hidden the rifle that was apparently the murder weapon.

Petitioner was charged with five counts of capital murder, including: murder of two or more persons by one act or pursuant to one scheme or course of conduct, in violation of Ala.

2

Code § 13A-5-40(a)(10); murder of Paul Franklin, Sr., during the kidnapping in the first
degree of said person, in violation of Ala. Code § 13A-5-40(a)(1); murder of Paul Franklin,
Jr., during the kidnapping in the first degree of said person, in violation of Ala. Code § 13A-
5-40(a)(1); murder during a burglary in the first degree, in violation of Ala. Code § 13A-5-
40(a)(4); and murder during a robbery in the first degree, in violation of Ala. Code § 13A-5-
40(a)(2). *See Peoples*, 510 So. 2d at 555. He was convicted by a jury on all five counts, and
the jury recommended the death penalty by a vote of 11-1.

The trial court reviewed the jury's recommendation and made its own findings of fact
as required by Alabama law. In considering the jury's recommendation, the trial court found
as aggravating factors that the capital offense was especially heinous, atrocious, or cruel
compared to other capital offenses and that the capital offense was committed while petitioner
was "engaged or was an accomplice to the commission of, or an attempt to commit, or flight
after committing or attempting to commit robbery, burglary and kidnapping." *Id.* at 573-74
(appendix). The only mitigating circumstance was that the petitioner had no significant history
of prior criminal activity. *Id.* at 572, 574. The trial court, therefore, determined that the
aggravating factors "far outweigh[ed]" the mitigating factors, and the court imposed a sentence
of death by electrocution. *Id.* at 574 (appendix).

Petitioner appealed his conviction. The Court of Criminal Appeals of Alabama and the
Alabama Supreme Court both affirmed his conviction, and the United States Supreme Court
denied Peoples's petition for certiorari. *See Peoples v. State*, 510 So. 2d 554 (Ala. Crim.
App. 1986); *Ex parte Peoples*, 510 So. 2d 574 (Ala. 1987); *Peoples v. Alabama*, 484 U.S.
933 (1987). Peoples then filed for post-conviction relief under then Rule 20 of the Alabama

3

Temporary Rules of Criminal Procedure (now Ala. R. Crim. P. 32). That petition was

denied, and the Alabama Court of Criminal Appeals affirmed. *See Peoples v. State*, 565 So.

2d 1177 (Ala. Crim. App.), *cert. denied*, 565 So. 2d 1177 (Ala. 1990), *and cert. denied*, 498

U.S. 973 (1990). Both the Supreme Court of Alabama and the United States Supreme Court

denied Peoples's subsequent petitions for certiorari. *See id.* Peoples then filed the instant

petition for a writ of habeas corpus.

On direct appeal to the Alabama Court of Criminal Appeals petitioner raised the

following claims:

I.    Did the court err in denying [petitioner's] motion for change of venue.

II.   Did the court err in admitting proof of the blood type, type "O",
      of Judy C. Franklin before the jury when said proof was based on
      hospital records certified under section 12-21-5, Code of
      Alabama 1975, and on evidence of blood donor card of the
      deceased.

III.  Did the court commit prejudicial error by giving an instruction to
      the jury that the failure of the [petitioner] to request to testify
      shall not create any presumption against him.

IV.   Did the court commit reversible error in denying the challenge
      for cause of a juror who was a reserve Talladega County deputy
      and who accompanied the sheriff of Talladega County to the
      crime scene in the case at issue when the bodies of the victims
      were located.

V.    Did the court err in denying [petitioner's] motion for mistrial or
      in the alternative motion for continuance as to the jury venire
      when the district attorney made a comment during jury selection
      as follows: "If the [petitioner] did not testify in this case, I'll just
      ask you if you could follow the judge's --."

VI.   Did the court err in allowing the prosecution to question defense
      witnesses in the sentencing hearing before the jury about pending
      felony cases and misdemeanor worthless check cases.

4

VII.     Did the court find any aggravating circumstances to justify the imposition of the death penalty under the Alabama death penalty statute.

VIII.    Did the court err in admitting [petitioner's] boots into evidence as state's exhibit no. 26 when said boots were involuntarily taken from [petitioner] while [petitioner] was in custody.

IX.      Did the court err in admitting into evidence items obtained from the [petitioner] based on his illegal arrest on July 11, 1983, by the Childersburg Police Department.

X.       Did the court err in admitting into evidence over the [petitioner's] motion to suppress and objection, evidence from the crime scene in Talladega County and the fruits thereof, obtained by [petitioner] directing law enforcement authorities to the bodies of the victims on July 13, 1983.

XI.      Did the court err in admitting into evidence the statement of the [petitioner] made on July 19, 1983, while incarcerated in the St. Clair County Jail.

XII.     Did the conduct of the state in seizing a tape recorder belonging to a defense investigator and provided to the [petitioner] for his use in jail in preparing his defense and in subpoenaing a defense investigator to determine what information the defense had available to them amount to a denial of the [petitioner's] Sixth Amendment right to counsel such as to require a dismissal of the indictment.

(R-43).

On May 27, 1986 petitioner's conviction was affirmed. *Peoples v. State*, 510 So. 2d 554

(Ala. Cr. App. 1986).

On application for rehearing petitioner raised the same claims raised on direct

appeal and also raised the following additional claims:

XIII.    Did the court err in admitting into evidence evidence obtained subsequent to the [petitioner's] illegal arrest in Childersburg, Alabama, by the Childersburg Police Department?

XIV.   Did the court err in admitting the bill of sale and tag receipt, the same being obtained as a result of a custodial interrogation of the [petitioner] by Police Chief Ira Finn in violation of the [petitioner's] Fourth, Fifth and Sixth Amendment rights under the United States Constitution?

XV.    Did the trial court err and this court err in allowing testimony concerning the crime scene in Talladega County and the fruits thereof, in that it held that the testimony of Timothy Gooden was an "independent source", when his identity was secured as a result of an illegal arrest in violation of defendant's Fourth, Fifth and Sixth Amendments to the United States Constitution.

(R-44).

The application for rehearing was overruled without opinion on July 15, 1986. *See Peoples*, 510 So. 2d at 554.

Petitioner filed a petition for writ of certiorari to the Alabama Supreme Court which was granted as a matter of right pursuant to Rule 39(c), Alabama Rules of Appellate Procedure. In the petition for writ of certiorari, petitioner raised the same claims raised on direct appeal and in the appeal for rehearing. (R-45). Petitioner's conviction was affirmed by the Alabama Supreme Court on April 3, 1987. *Ex Parte Peoples*, 510 So. 2d 574 (Ala. 1987).

On application for rehearing, petitioner again raised the same claims that he raised on direct appeal, on application for rehearing to the Court of Criminal Appeals, and on petition for writ of certiorari to the Alabama Supreme Court. Petitioner also raised two additional claims:

XVI.   Was Timothy Gooden a "Independent Source" for the seizure of the crime scene on July 13, 1983, including the bodies of the deceased victims and all related evidence received from the scene?

6

XVII. Did this court err in holding that Appellant Peoples stopped in
front of a drug store in Childersburg, Alabama, and subsequent
conveyance to the Police Station was a "valid investigatory stop?"

(R-48).[3]

The application for rehearing to the Alabama Supreme Court was denied on June 19, 1987.

*Id.*

Thereafter, petitioner filed in the United States Supreme Court a petition for writ of

certiorari to the Supreme Court of Alabama, raising the following claims:

1.      Whether the petitioner was arrested under the Fourth Amendment, United States
Constitution, when taken to the police station, questioned, his car and
ownership papers seized, told of the existence of invalid warrant, and held at the
station for the state police.

2.      Whether the independent source doctrine was misapplied, where independent
source led police to site of bodies one day after petitioner had led police to the
bodies and crime scene and all evidence included there had already been taken
away and recovered before independent source arrived.

(R-46).

On November 2, 1987 the petition for writ of certiorari to the Supreme Court of Alabama was

denied. *Peoples v. Alabama*, 484 U.S. 933 (1987).

---

[3] The title page of R-48 is designated "Brief and Argument of the State on Petition for Writ
of Certiorari to the Court of Criminal Appeals." On closer examination it is clear from pages 1
through 115 that R-48 is actually petitioner's Application for Rehearing under Rule 40, Alabama
Rules of Appellate Procedure.

On January 18, 1989 petitioner filed a Rule 20 petition in state court, alleging:

(1)     Conviction obtained by use of coerced confession.

   (a)     Statement of Defendant made on July 19, 1983, was admitted into
           evidence although the statement was obtained by force and against the
           will of the Defendant, said force and threats being applied by the
           respective Sheriffs of St. Clair and Talladega Counties. Petition[er] was
           further denied his right to counsel at the interrogation session held on
           July 19, 1983, and Petition[er] was further being held unlawfully and
           illegally in violation of the Fourth, Fifth and Sixth Amendments of the
           United States Constitution.

(2)     Conviction obtained by use of evidence gained pursuant to an unconstitutional
        search and seizure.

   (a)     The conviction was obtained by the use of evidence gained pursuant to
           an unlawful search and seizure of the Petitioner's corvette automobile
           and the Petitioner's apartment located in Talladega, Alabama.
           The Petitioner was unlawfully arrested and held unlawfully pursuant to
           an invalid warrant for issuing a worthless check at the Police Station in
           Childersburg, Alabama while law officers searched and seized his
           corvette[] automobile. Evidence obtained therefrom was used in trial
           against the Petitioner. While unlawfully in custody, Petitioner was
           requested to sign a consent search to search his apartment in Talladega,
           Alabama. Such consent was invalid in that both a Fourth, Fifth and
           Fourteenth Amendment violation of the United States Constitution had
           occurred and was in process at the time the consent was signed and the
           search and seizure of both the automobile and apartment were invalid.

(3)     Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

   (a)     Petitioner would aver that he was unlawfully arrested on July 11, 1983,
           in Childersburg, Alabama, and was held pursuant to an invalid or non-
           existent warrant for issuing a worthless check. While in custody, he was
           interrogated and the evidence, including a bill of sale and tag receipt to
           Petitioner's corvette automobile, a statement from Petitioner including a
           statement that he had been to the victim's house with his cousin,
           Timothy Gooden, was taken while unlawfully in custody, Petitioner was
           further requested to sign a consent to search his apartment in Talladega
           county and clothing was obtained therefrom and was used in evidence at
           trial against him.

8

(4)[4]   Petitioner would further aver that he was unlawfully arrested on July 12, 1983, and evidence taken from him pursuant to a previous unlawful arrest for issuing a worthless check was used to support probable cause for the issuance of an arrest warrant in St. Clair County, charging him with theft by deception of a corvette automobile from one Paul Franklin. Petitioner would further aver that while unlawfully in custody his boots were taken from him and said boots were subsequently used as evidence in trial against Petitioner.

(5)   Conviction obtained by violation of the privilege against self-incrimination.

    (a)   Petitioner would aver that evidence from the crime scene in Talladega County, Alabama, discovered on July 13, 1983, was used in evidence against him and said evidence was obtained in violation of his Fourth, Fifth, Sixth and Fourteenth Amendment rights secured to him under the United States Constitution in that Petitioner was promised that if he would lead law enforcement officers [to] evidence that he knew about including the bodies of the victims that he would not be prosecuted and would be released and bond would be set on a theft charge against him. In fact, Petitioner was subsequently indicted for the murder of the Franklin family and the evidence obtained from the crime scene was used in evidence against him.

    (b)   The statement made by Defendant to the Sheriffs of Talladega and St. Clair Counties on July 19, 1983, was admitted into evidence although said statement was made by Defendant by threat or coercion and without the presence of counsel which he requested and while Petitioner was being unlawfully held in custody in the St. Clair County Jail in Ashland, Alabama.

(6)   Conviction obtained by the unconstitutional failure of the prosecution to disclose to the Defendant evidence favorable to the Defendant.

    (a)   Petitioner would aver that the prosecution was aware that its witness, Timothy M. Gooden, was being untruthful and that Timothy M. Gooden had been seen in Talladega County by an unnamed person constituting an alibi for Co-Defendant, Timothy M. Gooden, on the night that the alleged offense occurred and at the time that the alleged offense occurred, the name of the alibi witness for co-Defendant, Timothy M.

---

[4] This claim was set forth in the Rule 20 petition as claim 3(b); however, it was treated by the Rule 20 court as claim 4. Consequently, all of the remaining claims are renumbered to coincide with the Rule 20 court's discussion of the issues.

Gooden, has never been disclosed by the State and was not disclosed by
the State although requested [sic] specifically requested by Petitioner in a
pretrial motion for discovery.

(b)     Petitioner would further aver that the prosecution was aware of the fact
that Timothy M. Gooden, a Co-Defendant in this case, and a witness for
the State of Alabama, was being untruthful when he testified against the
Defendant and specifically being untruthful in that prosecution asserted
that co-Defendant Gooden lead the Sheriff of Talladega County to the
Crime scene w[h]ere the bodies ... of the victims were found when in
fact the prosecution was aware that the Petitioner had not in fact lead
anyone to a crime scene in that Co-Defendant had never been present at
the crime scene and this fact was not disclosed to the Petitioner prior to
trial.

(7)     Denial of effective assistance of counsel.

(a)     Petitioner would aver that he was denied effective assistance of counsel
as follows:

(1)     His counsel at the time of his illegal arrest, the Honorable Ray
Robbins, negotiated an immunity [agreement] from prosecution
for Petitioner. However, counsel neglected to secure a written
signed agreement for immunity until after Petitioner had
disclosed in reliance thereon damaging evidence to Petitioner
voluntarily and in reliance on a promise made to him by and
through his counsel.

(b)     Petitioner was denied effective assistance of counsel on July 19, 1983,
by the Sheriff's [sic] of St. Clair and Talladega Counties in that he was
interrogated without presence of his counsel even though he had
requested counsel and counsel had requested that he not be interrogated
specifically without the presence of counsel, Ray F. Robbins.  In
testimony, Attorney Robbins, testified directly that he had told Sheriff
Jerry Studdard not to talk to Petitioner without counsel being present
until the following Monday, which would have been after July 19, 1983.
His interrogation without the presence of counsel after a direct
instruction was a denial of effective assistance of counsel and his Fifth
amendment rights were violated by the statement obtained thereby at
trial.

(8)     The State failed to make an election of charges in that the State charged the
        Petitioner with murder during the commission of a burglary, murder during the
        commission of a robbery, murder of two or more people, murder during a
        kidnapping in the first degree.

        (a)     Petitioner would aver that his rights under the Fourth, Fifth, Sixth,
                Eighth and Fourteenth Amendments to the United States Constitution
                were violated and other constitutional violations occurred in that each
                charge could not have been submitted to the jury since all charges arose
                out of the same set of facts and he could not constitutionally be found
                guilty of each count in the indictment, but that the State was required to
                make an election as to which charge would be submitted to the jury and
                Petitioner would further aver that he was highly prejudice[d] by the
                submission of various counts to the jury all restating the same set of facts
                and he was denied thereby a right to a fair and impartial trial before a
                jury.

(9)     Petitioner was denied a fair and impartial trial before a jury in the sentencing
        hearing and his Constitutional rights were violated in the following aspects.

        (a)     The District Attorney, over objection of Petitioner's counsel, was
                allowed to cross exam character witnesses for the Petitioner with respect
                to uncharged misconduct and charged misconduct for which the
                Petitioner had not been convicted.  Such conduct in a sentencing hearing
                in life or death setting was highly prejudicial to Petitioner and requires at
                best a new sentencing hearing before a fair and impartial jury.

(10)    Petitioner was denied his Constitutional right to a trial before a fair and
        impartial jury in that Petitioner challenged for cause jurors who stated a strong
        predisposition to impose the death penalty. It is clear that the State was allowed
        and would be allowed to strike jurors who indicated a strong disposition against
        imposing the death penalty.  Petitioner specifically challenged for cause jurors
        who stated that they absolutely would give the death penalty.  Therefore,
        showing a strong bias and predisposition to the imposition to the death penalty
        and the inclusion of such jurors in the panel from which the Petitioner was
        required to strike a jury denied Petitioner his right to a fair and impartial jury.

(11)[5]   Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:

The Petitioner was convicted largely on the testimony of a Co-Defendant, Timothy M. Gooden. Co-Defendant, Timothy M. Gooden, testified in substance that he went with Petitioner to the Franklin family residence, that he witnessed the Petitioner rob, burglarize and kidnap the Franklin family. That he went with the Petitioner and the Franklin family to Talladega County and was present when the Petitioner went into the woods in Talladega County and killed the members of the Franklin family. The Appella[te] Court in *Peoples v. State* have further upheld the conviction of Petitioner upon the testimony or assertion that Co-Defendant, Timothy M. Gooden, on July 14, and 15, 1983, led the Sheriff of Talladega County to the crime scene where the bodies of the Franklin family had been discovered earlier when Petitioner led law enforcement officers to the bodies of the Franklin family. Petitioner would aver that Timothy M. Gooden had stated publically [sic] since his testimony that he and his family were threatened to secure his testimony, that he was forced into testifying against Petitioner, that he was not involved with the murdering of the Franklin family and that he was whipped by two detectives in Talladega County, Alabama, to secure his testimony. Petitioner would further aver that Timothy M. Gooden, in an interview with Petitioner's counsel, stated that he was told what to testify to, that he was not present at the Franklin house nor did he accompany the Franklin family and Petitioner to Talladega County, Alabama, at any time, and that he further did not accompany the Sheriff of Talladega County, Alabama, to any location or crime scene to point out the location of any offense. Petitioner would further aver that the witness co-Defendant Timothy M. Gooden has filed several post trial conviction writs and has withdrawn the same upon threat of prosecution under the capital statute of the State of Alabama and that the testimony of the witness, Timothy M. Gooden, was threatened, coerced, untrue and that the facts were not known to the Petitioner at the time of trial, that the facts clearly did not amount to impeachment evidence, that clearly the result would have been different if Timothy M. Gooden had not testified and the facts would further result in Petitioner being found innocent and not being sentenced to death in the instant case.

---

[5]   This issue was presented in paragraph 12(E) in the Rule 20 petition. For ease in identification of the issues raised in the Rule 20 petition, this court will continue the chronological listing of issues by referring to this issue as issue 11.

> Timothy M. Gooden has written a letter to the Talladega Daily Home stating
> precisely the facts averred by Petitioner herein and a copy of the letter is
> attached hereto as Exhibit "B" to this Petition.

(R-50 (Ex. A)).

On March 7, 1989, following an evidentiary hearing, the trial court denied the Rule 20

petition stating that part of claim 1 and claims 2, 3, 4, 5, 9 and 10 were raised and addressed

on appeal and, thus, could not be raised in a Rule 20 petition.  The trial court further held that

part of claim 1 and claim 8 were procedurally barred from review because the claims could

have been but were not raised at trial and on appeal.  The trial court addressed the remaining

Rule 20 claims.

Petitioner appealed from the denial of the Rule 20 petition raising the following claims:

I.     Did the court err in denying [petitioner's] motion for change of venue?

II.    Did the court commit prejudicial error by giving an instruction to the
       jury that the failure of the [petitioner] to request to testify shall not
       create any presumption against him?

III.   Did the court err in denying [petitioner's] motion for mistrial or in the
       alternative motion for continuance as to the jury venire when the district
       attorney made a comment during jury selection as follows: "If the
       [petitioner] did not testify in this case, I'll just ask you if you cou[l]d
       follow the judge's --."

IV.    Did the court err in allowing the prosecution to question defense
       witnesses in the sentencing hearing befo[r]e the jury about pending
       felony cases and misdemeanor worthless checks cases?

V.     Did the court abuse its discretion in failing to grant a new trial based on
       the recanted trial testimony of co-defendant, Timothy M. Gooden?

VI.    Did counsel, Ray Robbins, render ineffective assistance of counsel to the
       petitioner in violation of his Sixth Amendment right to counsel?

13

    VII.    Did the trial court abuse its discretion in finding that Timothy M.
Gooden was an "independent source" for the discovery of the bodies of
the Franklin family, hence Timothy M. Gooden has recanted his
testimony that he lead law enforcement authorities to the crime scene and
did the court thereby abuse its discretion by not granting petitioner a new
trial?

    VIII.    Did the court err in admitting proof of the blood type, type "O", of Judy
C. Franklin before the jury when said proof was based on hospital
records certified under Section 12-21-5, *Code of Alabama* 1975, and on
evidence of blood donor card of the deceased?

    IX.    Did the court commit reversible error in denying the challenge for cause
of a juror who was a reserve Talladega County deputy and who
accompanied the Sheriff of Talladega County to the crime scene in the
case at issue when the bodies of the victims were located?

    X.    Did the court find any aggravating circumstances to justify the
imposition of the death penalty under the Alabama death penalty statute?

    XI.    Did the court err in admitting into evidence the statement of the
[petitioner] made on July 19, 1983, while incarcerated in the St. Clair
County jail?

    XII.    Did the court err in admitting into evidence, evidence obtained
subsequent to the [petitioner's] illegal arrest in Childersburg, Alabama,
by the Childersburg Police Department?

    XIII.    Did the court err in admitting into evidence items obtained from the
[petitioner] based on his illegal arrest on July 11, 1983, by the
Childersburg Police Department?

(R-57 at 14-18).

        In his reply brief petitioner raised the following additional claim:

    XIV.    Is [petitioner] entitled to a new trial under the standard set forth by the
Alabama Supreme Court in *Ex Parte Richard Frazier*, 88-778, decided
November 17, 1989?

(R-58). On February 2, 1990 the Alabama Court of Criminal Appeals affirmed the trial

court's denial of the Rule 20 petition. *Peoples v. State*, 565 So. 2d 1177 (Ala. Cr. App.

14

1990). Petitioner filed an application for rehearing petition raising the same claims raised on

appeal from the denial of his Rule 20 petition and in his reply brief on appeal from the denial

of the Rule 20 petition. (R-59). On March 16, 1990 the application for rehearing was denied.

*Peoples*, 565 So. 2d 1177. Peoples filed a petition for writ of certiorari, (R-60), which was

denied on June 22, 1990. *Peoples*, 565 So. 2d 1177.

In a petition for writ of certiorari filed in the United States Supreme Court, petitioner

raised the following claims:

> I.   Does the fact that the independent source witness has recanted his
>      testimony require reversal of conviction in a capital case?
>
> II.  Did the conduct of counsel for petitioner in the investigatory stage cause
>      actual and substantial prejudice to the [petitioner]?
>
> III. Did the Court err in admitting into evidence the statement of the
>      [petitioner] made on July 19, 1983, while incarcerated in the St. Clair
>      County Jail?

(R-62).

On November 13, 1990 the United States Supreme Court denied the petition for

writ of certiorari. *Peoples v. Alabama*, 498 U.S. 973 (1990).

## II.   Claims Presented in 28 U.S.C. Section 2254 Amended Petition

In the amended petition filed in this action pursuant to 28 U.S.C. § 2254, petitioner

raises the following claims:

> A.   John Peoples was medicated throughout the course of preindictment,
>      pretrial, and trial proceedings and not fully able to assist defense counsel
>      in his defense of capital murder charges, in violation of the Fifth, Sixth,
>      Eighth, and Fourteenth Amendments to the United States Constitution.
>
> B.   John Peoples was denied constitutionally guaranteed effective assistance
>      of counsel, prior to indictment, leading to his own production of

15

virtually all evidence later admitted against him at trial, in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

C.     The state offered no evidence that Paul Franklin was murdered, and John Peoples's three capital murder convictions relating to Paul Franklin's death stand in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

D.     Evidence and extra record information and displays concerning the victim Franklin family subverted John Peoples's fundamental rights to due process and a fair trial in contravention of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

E.     John Peoples's convictions cannot withstand constitutional muster, because they are based on the admittedly perjurious trial testimony of his co-defendant and alleged accomplice, Timothy M. Gooden, who recanted his trial testimony.

F.     The district attorney's abusive conduct was pervasive and worked to effect a fundamentally unfair trial in violation of John Peoples's Fifth, Sixth, Eighth, and Fourteenth Amendment guarantees.

G.     John Peoples was denied constitutionally guaranteed effective assistance of counsel at trial, on appeal, and in post-conviction proceedings in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

H.     The trial court's repeated failure to grant John Peoples a change of venue violated his constitutional rights to a fair trial, an impartial jury, and a sentencing hearing free from bias and prejudice.

I.      John Peoples's right to a fair trial by an impartial jury were violated by the trial court's unconstitutional restrictions on the voir dire examinations of prospective jurors in contravention of the Fifth, Sixth, Eighth and Fourteenth Amendments.

J.      The district attorney's racially biased use of peremptory strikes to exclude black persons from John Peoples's trial is a gross violation of his Eighth and Fourteenth Amendment rights under the United States Constitution.

K.   The trial court committed constitutional error in denying John Peoples's motion for mistrial, or in the alternative, for continuance of jury selection, when the district attorney commented to prospective jurors during jury selection "If the defendant did not testify in this case."

L.   The trial court's refusal to challenge for cause prospective juror Jimmy Chastain, a reserve Talladega County deputy sheriff who investigated the crime, denied John Peoples a fair trial and a reliable sentencing procedure guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

M.   John Peoples was illegally arrested in the early afternoon of July 11, 1983, outside Wesson's Pharmacy in Childersburg, Talladega County, Alabama, and all evidence subsequently obtained as the fruit of that unlawful arrest must be suppressed as violative of his Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution.

N.   The bill of sale and tag receipt for the Corvette, obtained from John Peoples as a result of his custodial interrogation by Childersburg Police Chief Ira Finn without any warning or waiver of his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), violated John Peoples's Fourth, Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution.

O.   The identification of Timothy Gooden, obtained from John Peoples as a result of his custodial interrogation by Childersburg Police Chief Ira Finn without any warning or waiver of his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), violated John Peoples's Fourth, Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution.

P.   The car, papers, clothing, and boots, obtained from John Peoples as a result of his custodial interrogation by Childersburg Police Chief Ira Finn without any warning or waiver of his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), violated John Peoples's Fourth, Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution.

Q.   The trial court committed error of constitutional dimension, having erroneously refused to grant the motion to suppress, by admitting into evidence all evidence obtained from the crime scene to which John Peoples had directed law enforcement authorities, in violation of his

17

rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

R.      John Peoples's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution were violated by the admission into evidence at trial of his illegally obtained statement on July 19, 1983.

S.      John Peoples's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution were violated by the admission into evidence at trial of his illegally obtained statement and his location of the purported murder weapon on July 22, 1983.

T.      The state's conduct in seizing a tape recorder belonging to defense counsel's investigator and previously provided to John Peoples for his use in preparing his defense and communicating with counsel violated John Peoples's Sixth Amendment right to counsel and Fifth and Fourteenth Amendment rights to due process and required dismissal of the indictment.

U.      The trial court's refusal to quash the prosecution's subpoena of defense counsel's investigative assistant for the entire duration of the trial intruded on John Peoples's Sixth Amendment right to counsel and deprived him of his Fifth and Fourteenth Amendment rights to due process.

V.      The trial court acted improperly and committed reversible error of constitutional dimension by admitting, without any witness and opportunity for constitutionally mandated confrontation, a ten-year-old, unauthenticated hospital record to connect one victim to the purported murder weapon, in violation of John Peoples's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

W.      The trial court's instruction on the defendant's failure to testify, which left the impression that an adverse inference might be drawn, violated John Peoples's constitutional rights to a fair trial and due process.

X.      The trial court erred in allowing the prosecutor to question defense witnesses at the sentencing hearing about a pending felony charge and some worthless check allegations, thus violating John Peoples's rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

18

Y.     The trial court's findings of aggravating circumstances violated John
       Peoples's rights pursuant to the violated John Peoples's rights pursuant
       to the Fifth, Sixth, Eighth and Fourteenth Amendments to the United
       States Constitution.

Z.     The jury's sequestration and its deliberations were unconstitutionally
       tainted.

(Petitioner's Amended Petition for Writ of Habeas Corpus filed November 14, 1994).

The Court entered an Order to Show Cause requiring respondents to appear and show

cause why the relief requested by petitioner should not be granted. In response thereto

respondents filed an Answer, Exhibits, and a Brief on the Merits. Thereafter, petitioner filed

a reply brief.

A.     John Peoples was medicated throughout the course of preindictment, pretrial,
       and trial proceedings and not fully able to assist defense counsel in his defense
       of capital murder charges, in violation of the Fifth, Sixth, Eighth, and
       Fourteenth Amendments to the United States Constitution.

In the amended petition petitioner alleges that he was medicated throughout the pretrial

and trial proceedings, that the medications were maintained by the jailers and dispensed at his

request, and that he was unable to fully communicate with defense counsel and participate in

his defense. In petitioner's reply to the response petitioner adds only that:

       Further investigation to date confirms that Peoples was being
       provided prescription medication, at least Adapin, a matter which
       can already be documented through pharmacy records. . . .
       Counsel also proffers witness testimony that Peoples was
       permitted unlimited self-medication with the complete knowledge
       and complicity of jail personnel.

19

The court construes this claim to be a substantive competency claim--*i.e.*, a claim that petitioner was denied due process by being tried and convicted while incompetent.[6] *See James v. Singletary*, 957 F.2d 1562, 1569-71 (11th Cir. 1992), *cert. denied*, 510 U.S. 896 (1993).

Respondents argue that this claim is procedurally barred from federal review because it was not raised at trial, on direct appeal or in the Rule 20 petition in state court. The Eleventh Circuit, however, has held that competency claims cannot be barred on the basis of the procedural default rule. *See Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995), *cert. denied*, 116 S. Ct. 2505 (1996); *Horace v. Wainwright*, 781 F.2d 1558, 1565 (11th Cir. 1986), *cert. denied*, 479 U.S. 869 (1986); *Adams v. Wainwright*, 764 F.2d 1356, 1359 (11th Cir. 1985), *cert. denied*, 474 U.S. 1073 (1986). Therefore, the court must address the merits of petitioner's claim.

A defendant is competent to stand trial if at the time he has the ability to consult with his lawyer with a reasonable degree of rational understanding and he has a rational, as well as factual, understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402 (1960). The petitioner is not entitled to a presumption of incompetency, and he must demonstrate his or her incompetency by a preponderance of the evidence. *James*, 957 F.2d at 1571. Furthermore, a petitioner is entitled to a hearing on his substantive incompetency claim only if he presents "clear and convincing evidence" creating a "real, substantial and legitimate

---

[6] A procedural competency claim or a *Pate* claim is a claim that "the trial court failed to hold a competency hearing after the defendant's mental competence was put at issue." *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995), *cert. denied*, 116 S. Ct. 2505 (1996). Petitioner has not alleged that his mental competence was put at issue at trial, and, thus, no procedural competency claim has been presented for review.

doubt" as to his competence to stand trial. *Medina*, 59 F.3d at 1106 (citations omitted). The standard of proof to show entitlement to a federal evidentiary hearing on a substantive competency claim "is high [and] the facts must positively, unequivocally and clearly generate the legitimate doubt." *Id*. The court is of the opinion that petitioner is not entitled to a hearing to develop the facts because he has failed to present the requisite clear and convincing evidence to create a real, substantial and legitimate doubt as to his competence to stand trial.

In the present case, the petitioner has made only conclusory allegations that he was incompetent to stand trial. He has not presented any concrete evidence indicating that at the time of his trial, he did not have the ability to consult with his lawyer or that he did not understand the proceedings against him. *Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988). The only evidence proffered by petitioner to support his allegation of incompetence is that he was receiving the medication Adapin during the pretrial and trial proceedings. The fact that petitioner received prescription medication does not render him *per se* incompetent to stand trial. *Medina*, 59 F.3d at 1107; *Fallada v. Dugger*, 819 F.2d 1564, 1569 (11th Cir. 1987). Whether petitioner was on medication is merely a relevant factor in determining competence. *Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992). In meeting his burden, petitioner must demonstrate that the medication sufficiently adversely affected him as to raise a doubt as to his ability to consult with his lawyer or understand the charge against him. *See Sheley*, 955 F.2d at 1439; *Medina*, 59 F.3d at 1106. Petitioner has not alleged any specific facts which would demonstrate that his ability to consult with his lawyer or understand the charge against him was adversely affected by his use of Adapin. Further, the record reflects that trial counsel was aware during the trial that petitioner was on medication, and

21

counsel did not raise a competency claim at trial. Although not determinative, the failure of trial counsel to raise a competency claim indicates that petitioner's mental competency was not in doubt. *See Adams v. Wainwright*, 764 F.2d at 1360.

The court is of the opinion that petitioner has failed to demonstrate his incompetency by a preponderance of the evidence. Thus, petitioner is not entitled to habeas relief on his claim under the Fifth and Fourteenth Amendments that he was incompetent to stand trial or on his claim under the Sixth Amendment that he was unable to consult with counsel. Although petitioner alleges an Eighth Amendment violation, he has stated no specific facts and has cited no case law to support an Eighth Amendment claim. The court therefore concludes that this claim is likewise without merit.

    B.    John Peoples was denied constitutionally guaranteed effective assistance of counsel, prior to indictment, leading to his own production of virtually all evidence later admitted against him at trial, in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

In support of his claim that pre-indictment counsel was ineffective petitioner alleges that:

> Immediately upon being detained, John Peoples reached out and sought the legal advice of Mr. Robbins over the telephone. Despite the fact that the Franklin family and their red Corvette had been reported missing for some four days by that time, with wide-scale publicity of the strange circumstances surrounding their absence, Mr. Robbins permitted John to discuss the red Corvette with law enforcement authorities. He provided John with no legal counsel whatsoever concerning his constitutional rights and the potential dangers of waiving any of those rights and cooperating with law enforcement authorities.

<p style="text-align:center">* * *</p>

<p style="text-align:center">22</p>

> Throughout the rest of the day and night and into the early
> morning hours of the next day, John Peoples, bereft of any
> effective assistance of legal counsel, continued to provide law
> enforcement authorities with statements, tangible items, and
> circumstantial information which eventually served as the key
> evidence convicting him of multiple capital murder.

> Not until the next day did Mr. Robbins choose to visit John
> Peoples, who by then was incarcerated at the St. Clair County
> jail upon a warrant charging him with theft by deception of the
> red Corvette. After speaking with his client, inexplicably and
> without authority, Mr. Robbins gave a false exculpatory
> statement on his client's behalf to the authorities, offering that his
> client "didn't have anything that would help them."

Petitioner further alleges that counsel negotiated an agreement and, as a result of that

agreement, petitioner gave a statement to law enforcement authorities and led the authorities to

the bodies of the victims. Subsequently, the prosecuting authorities refused to sign the

agreement. Petitioner also alleges that counsel "neglected to direct law enforcement authorities

not to speak further with his client and merely suggested that they may not do so." Finally,

petitioner alleges that counsel "also advised law enforcement authorities that his client would

probably give them everything they wanted over the next few days."

1.    Procedural Default

The only instances of ineffective assistance of counsel raised in the Rule 20 proceeding

were that counsel failed to negotiate a clear agreement and reduce it to writing prior to

petitioner leading authorities to the bodies of the victims and that counsel failed to direct law

enforcement authorities not to talk to his client in his absence. These were also the only

23

instances of ineffective assistance of counsel addressed in the trial court's order denying Rule 20 relief.[7]

The remaining instances of ineffective assistance of counsel are procedurally barred from federal review. Section 2254 of Title 28, United States Code, requires a habeas petitioner to exhaust all claims in state court before raising them in federal court. *Picard v. Connor*, 404 U.S. 270, 275 (1971). In the present case, petitioner did not raise in state court those claims that he seeks to raise here. Additionally, petitioner is now procedurally barred from raising those claims in state court because of the limitations period and the bar against successive petitions in the Alabama Rules of Criminal Procedure. *See* Ala. R. Crim. P. 32.2. Rule 32.2 and its predecessor, Alabama Temporary Rule of Criminal Procedure 20.2, both contain a two-year statute of limitations for bringing claims under Rule 32 and former Rule 20. Since petitioner's petition for writ of certiorari on his direct appeal was denied on November 2, 1987, petitioner had until November 2, 1989 to file a Rule 20 petition raising the claims at issue here. Because those claims have still never been raised in state court, the period of limitations has passed, and petitioner is now procedurally barred from raising these claims in state court. Petitioner is, therefore, procedurally barred from raising these claims in federal court because they were not exhausted in state court, and petitioner is barred from now raising them in state court. *See Collier v. Jones*, 910 F.2d 770, 773 (11th Cir. 1990); *see also*

---

[7] On appeal from the denial of the Rule 20 petition, petitioner complained only of counsel's failure to reach a clear agreement prior to allowing his client to give any statement or lead authorities to the bodies of the Franklins. Petitioner raised counsel's failure to direct law enforcement authorities not to talk to his client in his absence both in the motion to suppress and on direct appeal. Both of these instances of ineffective assistance of counsel are thus preserved for federal review as they were presented both to the state trial court and the appellate court.

*Teague v. Lane*, 489 U.S. 288 (1989) (holding that the procedural default rule applies where a claim has never been presented to the state courts).

Where a petitioner's claim is barred by a procedural default, a state prisoner may not obtain federal habeas relief "absent a showing of cause and actual prejudice." *Wilson v. Jones*, 902 F.2d 923, 925 (11th Cir. 1990) (citations omitted); *see Engle v. Isaac*, 456 U.S. 107, 129 (1982) . Petitioner has not shown cause and prejudice for failing to raise these instances of ineffective assistance of counsel in state court. Although petitioner argues that he has shown cause because he was represented by the same counsel throughout the trial, the appeal, and the Rule 20 proceedings, and that counsel cannot be expected to raise his own ineffectiveness, petitioner's argument fails. As the Eleventh Circuit has recently pointed out, the Supreme Court's holding in *Coleman v. Thompson*, 501 U.S. 722 (1991), mandates the conclusion that counsel's failure to raise his own ineffectiveness in a collateral proceeding does not establish cause to excuse a procedural default of that claim. *See In re Magwood*, 113 F.3d 1544, 1551 (11th Cir. 1997); *see also Hill v. Jones,* 81 F.3d 1015, 1025 (11th Cir. 1996) (holding that a petitioner may not rely on his collateral counsel's ineffectiveness to excuse a procedural default even if the collateral proceeding was the first opportunity to raise the claim), *cert. denied*, 117 S. Ct. 967 (1997). Thus, petitioner is not entitled to habeas relief as to those alleged instances of ineffective assistance of counsel that were not presented in state court because such claims are procedurally barred from federal review.[8]

---

[8] Many of the claims raised by petitioner in the instant action are procedurally barred, but the court will not repeat this discussion with regard to those claims. This discussion, however, is equally applicable to those other procedurally defaulted claims.

2.     Merits

The two instances of ineffective assistance of counsel which are not procedurally barred are that Ray Robbins, pre-indictment counsel, failed to negotiate a clear agreement and reduce it to writing prior to petitioner leading the authorities to the bodies of the victims and that he failed to direct law enforcement officials not to talk to his client in his absence. Although these two instances of ineffective assistance of counsel are preserved for federal review, they do not entitle petitioner to habeas relief on either Fifth or Sixth Amendment grounds.

a.     Sixth Amendment

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. Once the right to counsel has attached and has been invoked, any subsequent waiver during a police initiated custodial interview is ineffective. *Michigan v. Jackson*, 475 U.S. 625, 636 (1986). The Sixth Amendment right to counsel is offense specific, however, and does not attach until prosecution is commenced "by way of formal charge, preliminary hearing, indictment, information or arraignment." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991); *United States v. Gouveia*, 467 U.S. 180, 188 (1984); *Kirby v. Illinois*, 406 U.S. 682, 689 (1972); *Kight v. Singletary*, 50 F.3d 1539, 1548 (11th Cir. 1995), *cert. denied*, 116 S. Ct. 785 (1996). Petitioner's Sixth Amendment right to counsel, as made applicable to the states through the Fourteenth Amendment, attached with respect to the charge of theft when petitioner was formally charged with that offense on July 12, 1983. His Sixth Amendment right to counsel did not attach with respect to the capital murder charges, however, until petitioner was indicted for capital murder on August 3, 1983.

The Fifth and Ninth Circuits have recognized an exception to the "offense specific" rule which prohibits interrogation about an uncharged offense if it is "inextricably intertwined" or "extremely closely related" to the charged offense. *United States v. Carpenter*, 963 F.2d 736 (5th Cir.), *cert. denied*, 506 U.S. 927 (1992); *United States v. Hines*, 963 F.2d 255 (9th Cir. 1992); *United States v. Cooper*, 949 F.2d 737 (5th Cir. 1991), *cert. denied*, 504 U.S. 975 (1992). In *Waldrop v. Thigpen*, 857 F. Supp. 872, 902 (N.D. Ala. 1994), *aff'd*, 77 F.3d 1308 (11th Cir.), *and cert. denied*, 117 S. Ct. 247 (1996), this court noted this exception but held that the crime of receiving stolen property, specifically, the ring of the victim, involved different conduct from that of the uncharged crime of murder and, thus, the offenses did not fall within the exception. *Id.* at 902. The Eleventh Circuit held that the district court correctly concluded that petitioner's right to counsel had not yet attached on the uncharged murder offense. *See Waldrop v. Jones*, 77 F.3d 1308, 1317 (11th Cir.), *cert. denied*, 117 S. Ct. 247 (1996).

Similarly, in the instant case, the theft charge which was the charged offense, involved different conduct than the uncharged offense of capital murder. Even though petitioner was eventually charged with murder in conjunction with robbery and burglary, these charges are not inextricably intertwined or extremely closely related to the theft by deception charge. Therefore, the court is of the opinion that no Sixth Amendment right to counsel attached with respect to the capital murder charges until petitioner's indictment and arrest on those charges on August 3, 1983. The conduct of attorney Robbins about which petitioner complains occurred prior to that date. Consequently, petitioner is not entitled to habeas relief on Sixth

27

Amendment grounds because petitioner's Sixth Amendment right to counsel did not attach during Robbins' representation of petitioner.[9]

        b.     Fifth Amendment

      The Fifth Amendment right to counsel is not expressly provided by the Constitution but is a court created prophylactic measure designed to ensure that a person is protected from compulsory self-incrimination. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The legal basis for petitioner's claim that his Fifth Amendment right to counsel was violated is unclear. In fact, petitioner has made no argument as to how his Fifth Amendment right to effective assistance of counsel was allegedly violated. As noted, the Fifth Amendment merely prohibits compulsory self-incrimination. Thus, as long as a criminal defendant is aware that he can have counsel present, and counsel, if present, protects the defendant from an involuntary confession, the defendant has no claim under the Fifth Amendment with regard to the effectiveness of counsel. *See Colorado v. Connelly*, 479 U.S. 157, 170 (1986) (holding that the sole concern of the Fifth Amendment is governmental coercion and that *Miranda* does nothing more than protect defendants from government coercion that would lead them to surrender rights protected by the Fifth Amendment); *Claudio v. Scully*, 791 F. Supp. 985, 988 (E.D.N.Y. 1992) (holding that an attorney who ensures that his client is not compelled to speak has performed the role envisioned for him by *Miranda*) (citing *Connelly*, 479 U.S. at 170), *rev'd on other grounds*, 982 F.2d 798 (2d Cir. 1992), *and cert. denied*, 508 U.S. 912

---

     [9] The case action summary sheet shows that Pete Short represented petitioner from the time of arraignment on the capital murder charges. (Trial Record, Vol. 1, at 197).

(1993). Therefore, the court is of the opinion that petitioner is not entitled to habeas relief on the present claim under the Fifth or Sixth Amendments.

C. The state offered no evidence that Paul Franklin was murdered, and John Peoples's three capital murder convictions relating to Paul Franklin's death stand in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

The claim that no evidence was presented that Paul Franklin, Sr. was murdered, whether characterized as a Fifth, Sixth, Eighth or Fourteenth Amendment violation, is procedurally barred from federal review as it has never been presented in any form to the state courts for review.[10] In fact, petitioner has conceded that this claim was not raised on direct appeal or in the Rule 20 petition.

Petitioner apparently argues that the ineffective assistance of counsel was cause for his failure to raise these claims on appeal or in the Rule 20 petition. The court is of the opinion that petitioner has failed to demonstrate cause. Petitioner was represented by the same attorney at trial, on appeal and in the Rule 20 petition. Under Alabama law, when trial counsel is also appellate counsel, claims of ineffective assistance are cognizable in a Rule 32 (formerly Temporary Rule 20) petition rather than on direct appeal. *Ex Parte Besselar*, 600 So. 2d 978 (Ala. 1992); *Ex Parte Lockett*, 548 So. 2d 1045 (Ala. 1989) (ineffective assistance of counsel claims are cognizable in Rule 20 petitions pursuant to Rule 20.1(a), Ala. Temp. R. Crim. P.).

As noted above, the ineffective assistance of counsel claim is itself procedurally barred, except for the two aspects of the claim related to pre-indictment counsel. Furthermore,

---

[10] *See* note 8, *supra*, and accompanying text.

29

petitioner has failed to show cause for failing to raise this claim in the Rule 20 petition, as well. No constitutional right to an attorney exists in state post-conviction proceedings. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991). Thus, a petitioner cannot state a claim that counsel gave ineffective assistance in a post-conviction proceeding. As a result, although ineffective assistance of counsel can be "cause" under the cause and prejudice standard, where petitioner has no right to counsel and no constitutional claim for counsel's ineffectiveness, counsel's error is not "cause" to excuse a procedural default. *See id.* at 753-54. *See also Johnson v. Singletary*, 938 F.2d 1166, 1175 (11th Cir. 1991), *cert. denied*, 506 U.S. 930 (1992) (holding that "because Johnson had no constitutional right to counsel during his post-conviction proceedings, his attorneys' errors during those proceedings cannot constitute cause to excuse his procedural default"). Therefore, petitioner's assertion that his attorney's error constituted cause must fail. Counsel could have raised this now procedurally defaulted claim in the Rule 20 proceeding and did not.

Petitioner further argues that the procedural bar to his claim regarding the lack of evidence that Paul Franklin, Sr. was murdered should be excused under the principle of actual innocence from *Murray v. Carrier*, 477 U.S. 478 (1986). *Carrier* held that in "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.* at 496. The Supreme Court has since explained that to "establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 115 S. Ct. 851, 867 (1995). As this passage suggests, a petitioner

30

must support his claim of constitutional error "with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Id.* at 865. The focus of the inquiry, once new evidence is presented, is on "**actual innocence**." *See id.* at 867 (emphasis added).

With this focus on actual innocence, the question presented to the court on a claim under *Carrier* is not whether a reasonable doubt exists in light of the new evidence. Rather, the petitioner must show that no reasonable juror would have found the petitioner guilty in light of the new evidence. The court is not to make an independent assessment of the evidence, but it must determine what "reasonable properly instructed jurors would do." *Id.* at 868. Therefore, "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.*

In the instant case petitioner has failed to provide the court with any new evidence concerning Paul Franklin, Sr.'s death that was not presented at trial. His argument of actual innocence is based solely on what he alleges is the existing lack of evidence that Paul Franklin, Sr. was murdered.[11] Petitioner stated that no evidence supporting any cause of death of Paul Franklin, Sr. was produced at trial or has ever been proffered. Petitioner argues that the state's own expert testified at trial that the cause of Paul Franklin, Sr.'s death was not able to be determined. (*See* Trial Record, Vol. 10 and 11, R-1186 to R-1211). Petitioner also argues

---

[11] No evidentiary hearing is required because petitioner has not even proffered new reliable evidence.

31

that the prosecutor apparently indicated to the jury in his opening statement that he would

dismiss the capital murder counts relating to Paul Franklin, Sr., though he later changed his

mind. (*See* Trial Record, Vol. 12, R-1545, R-1581, R-1582). If, as the petitioner contends,

the evidence of Paul Franklin, Sr.'s murder is lacking now, it was lacking before. Thus,

petitioner has not presented any new evidence; he has simply made a new argument. As a

result, petitioner has not met his burden of showing actual innocence.

Furthermore, ample circumstantial evidence was presented at trial that petitioner is **not**

actually innocent. The evidence at trial showed that petitioner gagged and blindfolded Mrs.

Franklin and Paul Franklin, Jr. and then took Mr. Franklin downstairs. Following a

"commotion" downstairs, Gooden (the accomplice and co-defendant) took Mrs. Franklin and

Paul Franklin, Jr. downstairs where he found Mr. Franklin lying prone on the floor. Gooden

and petitioner then drove the Franklins to the wooded area in Talladega County. After

dragging Mr. Franklin into the woods and then leading his wife and child into the woods, as

well, the overwhelming evidence showed that petitioner proceeded to brutally murder Mrs.

Franklin and Paul Franklin, Jr. *See Peoples*, 510 So. 2d at 562. Although the exact cause of

death of Mr. Franklin was never determined, significant circumstantial evidence exists to

support the theory that petitioner was **actually guilty** as opposed to actually innocent of the

murder of Paul Franklin, Sr. Thus, even if the lack of new evidence did not foreclose

petitioner's actual innocence argument, petitioner has not shown that it is more likely than not

that no reasonable juror would have convicted him. Therefore, petitioner has failed to

establish the innocence necessary to excuse his procedural default, and petitioner is not entitled

to habeas relief on this claim.

D.     Evidence and extra record information and displays concerning the victim
       Franklin family subverted John Peoples's fundamental rights to due process and
       a fair trial in contravention of the Fifth, Sixth, Eighth, and Fourteenth
       Amendments to the United States Constitution.

Petitioner's claim that the presentation of certain evidence concerning the victim

Franklin family denied him due process and a fair trial in contravention of the Fifth, Sixth,

Eighth and Fourteenth Amendments to the United States Constitution is procedurally barred

from federal review due to petitioner's failure to raise this claim on appeal or in the Rule 20

proceedings.[12]

       To the extent that petitioner has argued that ineffective assistance of counsel was cause

to excuse the procedural default,[13] the court holds that ineffective assistance of counsel does

not constitute cause for the same reasons as discussed previously in section C.  Thus, the court

is of the opinion that this claim is procedurally barred from federal review.

E.     John Peoples's convictions cannot withstand constitutional muster, because they
       are based on the admittedly perjurious trial testimony of his co-defendant and
       alleged accomplice, Timothy M. Gooden, who recanted his trial testimony.

---

       [12] *See* note 8, *supra*, and accompanying text.  Additionally, petitioner gave the following
standard response to the state's assertions of a procedural bar:

              To the extent that the State argues procedural default in response to this
              claim, it is submitted that the state misreads, misinterprets and seeks to
              misapply the applicable case law and that, in any event, these claims further
              demonstrate the unconstitutionally ineffective assistance of counsel rendered
              to him in violation of his Sixth Amendment right under the United States
              Constitution.

Petitioner failed to argue any specifics as to where and when the claims were raised in state court, and
he failed to show cause and actual prejudice for his alleged procedural default.

       [13] It is not clear that petitioner is alleging ineffective assistance of counsel as cause for the
procedural default.  In the reply brief, petitioner actually argues that this claim "further demonstrate[s]
the unconstitutionally ineffective assistance of counsel rendered to him in violation of his Sixth
Amendment right under the United States Constitution."

33

Petitioner alleges that without the trial testimony of co-defendant and alleged

accomplice Timothy Gooden, the state could not prove petitioner guilty of capital murder

beyond a reasonable doubt. Petitioner further alleges that Gooden has since recanted his trial

testimony.[14]

At trial, Gooden testified that he and Peoples went to the Franklin home on the night of

July 6, 1983, and he further testified to the events that occurred on that night. In addition,

Gooden testified that he helped Peoples transport the Franklins to Talladega County where they

were killed, and he later directed law enforcement officers to that location. Gooden's

testimony at trial was detailed and specific. (Trial Record, Vol. 6 and 7, R-344 to R-405; *see*

*also* section C). At the Rule 20 evidentiary hearing, Gooden testified that his trial testimony

was false, that he never entered the Franklin house, that he did not escort anyone to Talladega

---

[14] Petitioner states that "[w]hile the state court hearing concerned accomplice Gooden's recantation of his trial testimony, no evidence of any kind was heard on the allegation that the prosecutor failed to disclose exculpatory evidence." Petitioner thus concluded that "the state court evidentiary hearing simply failed to address the claim." Petitioner's amended petition in this action does not make any reference to exculpatory evidence other than Gooden's alleged perjury and petitioner does not provide the court with any factual basis for this claim. In the state court Rule 20 petition, petitioner alleged but failed to prove that Gooden had been seen by an alibi witness. Further, petitioner had an opportunity to develop the facts in the state court evidentiary hearing. The Rule 20 court held that petitioner failed to prove that an "alibi" witness existed or that the prosecution knew such a witness existed. (Rule 20 Record, Vol. 1, at 107).

Because this exculpatory evidence allegation was not part of the amended petition, it will not be considered as part of the claim in section E. Even if this allegation were considered as a separate subpart to the claim in section E, petitioner would not be entitled to an evidentiary hearing in this court because of his failure to fully develop the facts in the Rule 20 evidentiary hearing and his inability to show cause and actual prejudice for that failure or demonstrate that a fundamental miscarriage of justice would result from this court's refusal to hold an evidentiary hearing. *See Keeney v. Tamayo-Reyes*, 504 U.S. 1, 11-12 (1992); *Mills v. Singletary*, 63 F.3d 999 (11th Cir. 1995), *cert. denied*, 116 S. Ct. 1837 (1996). Further, petitioner would not be entitled to habeas relief on the exculpatory evidence claim because he has failed to state a factual basis for that claim.

34

County that was killed, and that he testified as he did because of threats against him, his wife and family and because of the threat by the district attorney that he would try Gooden for capital murder. Gooden further testified, in essence, that he was coached by the prosecution as to how to testify at trial. (*See* Rule 20 Record, Vol.1, R-13 to R-85).

In order for perjury to constitute grounds for the granting of habeas relief, petitioner must show that the testimony was (1) used by the state, (2) false, (3) known by the state to be false, and (4) material to the guilt or innocence of the defendant. *Giglio v. United States*, 405 U.S. 150 (1972); *Williams v. Griswald*, 743 F.2d 1533, 1542 (11th Cir. 1984). Petitioner has failed to make this showing.

In the order denying the Rule 20 petition, the trial court found that Gooden was not a credible witness at the Rule 20 hearing. The court noted that Peoples's remaining witnesses did not support petitioner's claim, and George Sims (Gooden's attorney for the trial), in fact, contradicted Gooden's testimony. Several witnesses for the state, including C.J. Hallmark, an investigator with the Talladega Sheriff's office who helped investigate the Franklin murders; Robert Rumsey, the Talladega County District Attorney; and Jerry Studdard, the Sheriff of Talladega County, all testified to the effect that Gooden's trial testimony was truthful and his recanted testimony was not truthful. The court found Sims and these witnesses for the state to be credible. (*See* Rule 20 Record, Vol. 1, at 99-106). Relying on these witnesses and other factors in evaluating Gooden's testimony at the Rule 20 hearing, the court concluded that "it is clear that Gooden's Rule 20 testimony was false and his trial testimony was true." (Rule 20 Record, Vol. 1, at 106). Thus, the court concluded that petitioner was not entitled to a new trial because he had not produced any newly discovered evidence.

35

The Alabama Court of Criminal Appeals affirmed the trial court's finding that Gooden's recanted testimony was not credible. The court determined that, "in fact, the appellant wholly failed to prove his theory of 'knowing use of perjured testimony.' To the contrary, the State's testimony was accurate and truthful . . . ." *Peoples*, 565 So. 2d at 1180.

The credibility of a witness is a factual determination to which federal courts must accord a presumption of correctness under 28 U.S.C. § 2254. *Stokes v. Singletary*, 952 F.2d 1567, 1573 (11th Cir. 1992). The state courts' findings that the Rule 20 hearing testimony of Gooden, in which he recanted his trial testimony, was not credible and that the state's evidence was credible are fairly supported by the record. Further, petitioner has not rebutted the presumption of correctness, noted above. Thus, petitioner has failed to make the requisite showing of knowing use of false testimony necessary for habeas relief on a claim of alleged perjury.

F.  The district attorney's abusive conduct was pervasive and worked to effect a fundamentally unfair trial in violation of John Peoples's Fifth, Sixth, Eighth, and Fourteenth Amendment guarantees.

Petitioner has never presented this claim of prosecutorial misconduct to the state courts, and any attempt to raise this claim in state court now would be futile due to Alabama's two year statute of limitations and its successive petition rule. Therefore, this claim is procedurally barred from federal review.[15] Further, ineffective assistance of counsel is not cause to excuse this procedural default, for the same reasons as expressed previously in section C. Therefore, the court will not review the claim of prosecutorial misconduct.

---

[15] *See* note 8, *supra*, and accompanying text.

G.     John Peoples was denied constitutionally guaranteed effective assistance of counsel at trial, on appeal, and in post-conviction proceedings in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

In the amended petition, petitioner stated that he was denied constitutionally guaranteed effective assistance of counsel at trial, on appeal and in post-conviction proceedings. Each of petitioner's specific allegations relates to the performance of Pete Short who was retained counsel for petitioner at trial, on appeal and in post-conviction proceedings. On direct appeal, petitioner did not raise ineffective assistance of trial counsel. Further, the only allegations of ineffective assistance of counsel raised in the Rule 20 petition involved pre-indictment counsel, Ray Robbins. There was no allegation at the Rule 20 hearing that trial or appellate counsel was ineffective.[16]

The court concludes that this claim is procedurally barred from federal review due to petitioner's failure to raise these claims in state court, and the fact that any attempt to do so now would be futile due to Alabama's two year statute of limitations period, as well as Alabama's successive petition rule.[17] Further, as discussed previously in section B, petitioner's claim that he was denied effective assistance of post-conviction counsel fails to state a claim for relief because there is no right to effective assistance of counsel in post-conviction proceedings. *See Coleman v. Thompson*, 501 U.S. 722 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).

---

[16] Petitioner was informed in the Rule 20 proceedings that he could raise ineffective assistance of trial and appellate counsel in the Rule 20 petition and petitioner stated that he was satisfied with the representation rendered at trial and on appeal. (Rule 20 record, Vol. 1, R-6 to R-9).

[17] *See* note 8, *supra*, and accompanying text.

37

Petitioner argues that the court must consider the merits of this claim because the Court

of Criminal Appeals fully considered both counsel's performance on petitioner's behalf at trial,

on appeal and in post-conviction proceedings. On appeal from the denial of the Rule 20

petition the Alabama Court of Criminal Appeals reviewed the record as required pursuant to

Rule 45A of the Alabama Rules of Criminal Procedure and made a finding that petitioner was

not denied effective assistance of counsel at trial, on direct appeal, in the Rule 20 proceeding

or on appeal from the denial of the Rule 20 proceeding. The court stated:

> The appellant, in addition to the matters which were set
> forth in the original trial, sought to assert that his trial counsel
> was inadequate and ineffective as a matter of law and, secondly,
> that trial counsel failed to properly raise the issues on original
> direct appeal and that he, therefore, was not effectively
> represented on appeal of the original conviction.
>
> We shall cover these issues in this opinion. This court, as
> required by R. 45A, A.R.A.P., has carefully reviewed the record
> in this cause. We have also carefully considered each allegation
> as set forth in the Rule 20 petition, seeking post-conviction relief
> and, also, those which were heretofore asserted in this court and
> in the Supreme Court of Alabama.
>
> * * *
>
> We have also carefully considered appellant's assertions
> with reference to his representation by counsel. We are clear to
> the conclusion that the appellant failed to make out a case of
> either inadequate or ineffective representation by counsel at trial
> or on original appeal. The appellant, in his proof, wholly failed
> to satisfy either prong as set forth in the opinion of the Supreme
> Court of the United States in *Strickland v. Washington*, 466 U.S.
> 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).
>
> We have carefully reviewed this record again, and the
> original trial record, with reference to appellant's contentions
> concerning the ineffective assistance of counsel on his first appeal

38

as matter of right in accordance with *Evitts v. Lucey*, 469 U.S. 387, 105 S. Ct. 830, 83 L.Ed.2d 821 (1985).

\* \* \*

[I]n an abundance of precaution, we have carefully reviewed each allegation and assertion made by Peoples. We have carefully considered the work of his counsel on this appeal. We find that this appellant was fully and fairly represented, not only at original trial and on original appeal, but also at the Rule 20 petition hearing and in his appeal of that proceeding which is presently before this court. . . . The appellant's contention as to inadequate or ineffective representation is utterly without merit as a matter of fact and law.

565 So. 2d at 1179-80 (some citations omitted).

As noted above, the Rule 20 petition and the appeal from the denial of that petition raised only the ineffectiveness of Ray Robbins, petitioner's counsel prior to his indictment for capital murder. Furthermore, although the Alabama Court of Criminal Appeals stated, as quoted above, that petitioner "sought to assert" ineffective assistance of trial and appellate counsel, the court has reviewed the briefs on direct appeal, as well the Rule 20 petition and the briefs on appeal from the denial of the Rule 20 petition, and it is of the opinion that petitioner did not raise in state court those instances of ineffective assistance of counsel that petitioner seeks to raise here. Therefore, although the Court of Criminal Appeals apparently reviewed the effectiveness of petitioner's trial counsel because of its obligations under Alabama Rule of Appellate Procedure 45A, petitioner did not raise the issue of the ineffectiveness of his trial counsel in state court and he cannot do so now, and that claim is procedurally barred.[18]  *See Julius v. Johnson*, 840 F.2d 1533, 1546 (11th Cir.) (per curiam) (holding that the mere

---

[18] *See* note 8, *supra*, and accompanying text.

existence of a "plain error" rule did not preclude a finding of procedural default and holding

that the state court's independent review of the record did not constitute a ruling on the merits

of claims not raised in that court or any other court below), *modified on other grounds*, 854

F.2d 400 (11th Cir.), *cert. denied*, 488 U.S. 960 (1988); *Weeks v. Jones*, 26 F.3d 1030,

1045-46 (11th Cir. 1994) (citing *Julius* for the same proposition), *cert. denied*, 115 S. Ct.

1258 (1995).  Further, petitioner has not shown cause, based on the ineffectiveness of counsel,

sufficient to excuse this procedural default for the same reasons discussed previously in

sections B and C of this opinion.

Petitioner also argues that the conduct of prison officials in confiscating petitioner's

legal papers and copies of briefs filed in his criminal case constituted cause for his failure to

raise ineffectiveness of counsel in the Rule 20 petition.  Petitioner was represented by retained

counsel in the Rule 20 petition, and petitioner is bound by the actions of Rule 20 counsel.  *See*

*Coleman*, 501 U.S. at 753 (holding that the attorney is petitioner's agent when acting or

failing to act in furtherance of the litigation, and the petitioner must bear the risk that his

attorney will err).  Furthermore, petitioner has not shown how the taking of the legal papers

affected petitioner's ability to raise an ineffective assistance of counsel claim.  Finally, the

evidentiary hearing transcript shows that petitioner was satisfied with retained counsel who had

represented him at trial, on appeal and in the Rule 20 petition.  (*See* Rule 20 Record, Vol. 1, R-

4 to R-9)  Thus, petitioner has not shown cause and prejudice to overcome the procedural bar

to petitioner's present claim of ineffective assistance of counsel.

> H.    The trial court's repeated failure to grant John Peoples a change of venue
> violated his constitutional rights to a fair trial, an impartial jury, and a
> sentencing hearing free from bias and prejudice.

Petitioner alleges that the trial court's failure to order a change of venue violated his right to a fair trial. In support of this allegation petitioner contends that every juror questioned during striking indicated that he or she had read or heard about the crime and the circumstances of the crime. He states that it had been "generally publicized that [petitioner] had actually located the decedents' bodies and the hidden murder weapon for law enforcement authorities." He further argues that law enforcement personnel, including the district attorney, had made "public statements commenting on the horrendous nature and details of the crime and on the 'overpowering' evidence of petitioner's guilt."

The state trial court denied petitioner's motion for change of venue after a hearing, finding: (1) that the newspaper articles admitted at the hearing had not had a prejudicial effect on the citizens of Talladega County and that these articles were not so sensational, accusational or denunciatory that the general citizenry would be so affected by them that a fair and impartial trial would be impossible; (2) that considering the 91 affidavits introduced by the defendant to the effect that because of extreme publicity, it would be impossible for defendant to receive a fair trial before an impartial jury in Talladega County and the 188 affidavits introduced by the state to the opposite effect that defendant could receive a fair trial in Talladega County, a jury could be selected in this case free and clear of any bias or prejudice; and (3) that, based on the court's judicial knowledge, Talladega County has a population of 73,826 according to the 1980 census and covers approximately 750 square miles in area. (Trial Record, Vol. 1, at 93-94). Therefore, the court held the following:

> (A) There has been no showing of any actual prejudice
> nor any showing that pretrial publicity was anything other than

factual, truthful, objective and reasonably free from any calls for
action based on emotional subjective judgments.

(B) The Defendant has failed to show to the reasonable
satisfaction of this Court that an impartial trial and an unbiased
verdict cannot be reasonably expected in Talladega County.

(C) There is no showing of inherently prejudicial publicity
which has so saturated the community of Talladega county as to
have a probable impact upon the prospective jurors.

(Trial Record, Vol. 1, at 94). As a result, the court denied the motion for change of venue.

On direct appeal, the Alabama Court of Criminal Appeals made the following finding

of facts:

The appellant presented affidavits attesting to the belief
that he could not receive a fair trial in Talladega County. The
State countered with affidavits to the contrary. Newspaper
articles were admitted into evidence to show pre-trial publicity.
The articles are objective, and use the seemingly, non-accusatory
journalistic phraseology of "reportedly," "allegedly," "according
to," etc. The articles do not contain inherently prejudicial
information. All seventy-nine veniremen had either read or heard
about the incident; however, only eight had fixed opinions
regarding the appellant's guilt or innocence. Those eight were
stricken for cause. The appellant did not prove actual prejudice
on the part of any of the remaining veniremen.

After an independent review of the record, § 15-2-20(b), Code of
Alabama 1975, we do not find that there was "a trial atmosphere
that had been utterly corrupted by press coverage." *Murphy v.
Florida*, 421 U.S. 794 (1975). The trial judge did not abuse his
discretion by denying the motion for change of venue.

*Peoples*, 510 So. 2d at 563-64.

In *Mills v. Singletary*, 63 F.3d 999 (11th Cir. 1995), *cert. denied*, 116 S. Ct. 1837

(1996), the Eleventh Circuit addressed the proof necessary to support a Sixth and Fourteenth

Amendment claim based on actual or presumed prejudice as a result of pretrial publicity. The

court held that

> [t]o demonstrate actual prejudice, [the petitioner] must prove that
> "one or more jurors entertained an opinion before the trial," that
> [the petitioner] was guilty and "that these jurors could not put this
> prejudice aside and render a verdict based solely on the evidence
> presented." [citations omitted].

*Id.* at 1009.

Petitioner has not shown or even alleged that any one of the jurors had formed an opinion that

petitioner was guilty prior to hearing the evidence.

In the reply brief petitioner alleges that the first jury panel had to be stricken and the

case continued because "prejudicial discussions between a grand juror and members of the jury

panel had occurred, demonstrating actual prejudice to [petitioner's] right to a fair and impartial

jury." The fact that the first jury panel had to be stricken and the case continued is not

evidence of actual prejudice. To the contrary, the fact that the contaminated jury was stricken

and the case continued shows that the trial court was concerned that petitioner's right to a fair

and impartial jury was preserved. The court concludes that petitioner has not established

actual prejudice.

"To determine whether [petitioner] has established presumed prejudice, [the court must]

examine whether: (1) the pretrial publicity was sufficiently prejudicial and inflammatory; and

(2) the publicity saturated the community in which the trial was held." *Mills*, 63 F.3d at 1010.

Presumed prejudice "is rarely applicable and reserved for extreme situations." *Id.* (quoting

*Bundy v. Dugger*, 850 F.2d 1402, 1424 (11th Cir. 1988), *cert. denied*, 488 U.S. 1034

(1989)). At the hearing on the motion for change of venue, petitioner introduced as

43

defendant's Exhibit 1 a compilation of newspaper articles, which he represented to be "primarily from the Talladega newspaper." (*See* Trial Record, Vol. 2, R-4). In addition, his attorney argued that the comments of St. Clair County Assistant District Attorney Dennis Abbott violated the Code of Professional Responsibility for Disciplinary Ruling as it relates to pretrial publicity (Trial Record, Vol. 2, R-7 to R-9) and that the comments required a change of venue to ensure petitioner a fair and impartial jury and fair trial. (Trial Record, Vol. 2, R-13).

The court has reviewed the conclusory affidavits filed by petitioner and the prosecution in which various citizens stated their opinions that petitioner could or could not receive a fair and impartial trial. The court also has reviewed the newspaper articles submitted by petitioner in support of his motion for change of venue, and the court is of the opinion that the trial court's finding that the articles were not "sensational, accusational or denunciatory" and the findings by the Court of Criminal Appeals that the articles were "objective" and did "not contain inherently prejudicial information" are entitled a presumption of correctness as they are supported by the record. *See* 28 U.S.C. § 2254; *Stokes*, 952 F.2d at 1573. The articles did not contain any detailed or graphic descriptions of the injuries inflicted upon the victims and the state of the bodies when found, nor did the articles mention any confession by petitioner. Petitioner singled out one article that was based on the comments of St. Clair County District Attorney Abbott. That article reported that Abbott predicted that the case "would be 'tried to a successful conclusion.'" Abbott apparently also speculated, according to the article, that petitioner's motions to dismiss had been filed "because 'the case against his client is overpowering.'" He also stated that "the deputies and investigators did an 'excellent job,'" and

44

that the "[a]uthorities have a 'very, very, very good case.'" Mr. Abbott also apparently added that in making the allegations in the motion to dismiss that petitioner had been influenced by a deal between his former attorney and the state, petitioner's attorney was "'not under oath'" and that "'the only limits are his conscience.'" Abbott also predicted that he would be called to testify and that it would be shown that no deal had been made, and the trial would proceed from there. He then added that "Mr. (Robert) Rumsey will prosecute it like it should be, and I feel very confident the jury will find both of them (Peoples and Gooden) guilty." Finally, Abbott stated that he hoped the authorities would seek "the maximum punishment"--i.e., the death penalty. (*See* Trial Record, Vol. 4 (newspaper articles)). Although Abbott expressed his opinion in the article, he did not comment directly on the evidence itself.

Based on an independent examination of the affidavits and the newspaper articles, the court concludes that the pretrial publicity was not sufficiently prejudicial and inflammatory to establish presumed prejudice. The mere fact that all of the jurors on the venire indicated they had read or heard about the crime or circumstances of the crime is insufficient to establish presumed prejudice where it does not otherwise exist. As stated in *Mills*, a defendant is "not entitled to a jury 'ignorant about relevant issues and events.'" *Mills*, 63 F.3d at 1011 (citations omitted). Rather, petitioner "is entitled to relief only if he establishes that 'the populace from which [his] jury was drawn was widely infected by a *prejudice* apart from mere familiarity with the case.'" *Id.* at 1011-12 (alteration in original) (citations omitted). The newspaper articles relied upon by petitioner were "essentially factual and [were] not directed at arousing or inciting the passion of the community." *See Devier v. Zant*, 3 F.3d 1445, 1462 (11th Cir. 1993), *cert. denied*, 513 U.S. 1161 (1995). Further, the fact that only 8 of the 79 veniremen

45

(approximately 10%) were stricken because they had fixed opinions regarding petitioner's guilt or innocence is further evidence that the populace from which the jury was drawn was not widely infected by prejudice.  *See Devier*, 3 F.3d at 1462 (sixteen of seventy-six jurors on panel were excused for cause because they conceded they had formed opinion of petitioner's guilt or innocence which they could not set aside). The court concludes that the present claim is without merit as petitioner has failed to establish that the pretrial publicity gave rise to actual or presumed prejudice.

I.      John Peoples's right to a fair trial by an impartial jury were violated by the trial court's unconstitutional restrictions on the voir dire examinations of prospective jurors in contravention of the Fifth, Sixth, Eighth and Fourteenth Amendments.

Petitioner argues that effective questioning of the prospective jurors concerning their media exposure and preconceptions could not take place without individual voir dire.  This claim is procedurally barred from federal review because it was not raised on direct appeal or in the Rule 20 petition,[19] and petitioner has failed to show cause and prejudice for his procedural default.  To the extent that petitioner attempts to assert ineffective assistance of counsel as cause for his procedural default, ineffective assistance of counsel cannot constitute cause for the reasons set forth previously in section C.

J.      The district attorney's racially biased use of peremptory strikes to exclude black persons from John Peoples's trial is a gross violation of his Eighth and Fourteenth Amendment rights under the United States Constitution.

Petitioner alleges that during jury selection, the prosecutor eliminated twelve of the seventeen potential black jurors in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986) and

_____

[19] *See* note 8, *supra*, and accompanying text.

*Powers v. Ohio*, 499 U.S. 400 (1991).  In *Powers*, the Supreme Court specifically held that *Batson* applies to white defendants as well as black defendants.  Petitioner is white.

This claim is procedurally barred from federal review as it has never been raised in state court.[20]  Further, petitioner has failed to show cause and prejudice for his procedural default.  To the extent that petitioner alleges ineffective assistance of counsel as cause, this cannot constitute cause for the reasons previously discussed in section C.[21]  Therefore, petitioner is not entitled to habeas relief on this claim.

> K.    The trial court committed constitutional error in denying John Peoples's motion for mistrial, or in the alternative, for continuance of jury selection, when the district attorney commented to prospective jurors during jury selection "If the defendant did not testify in this case."

During voir dire of prospective jurors, Robert Rumsey, the district attorney, asked one of the prospective jurors while in the presence of six other prospective jurors: "Mrs. Ryan, if the defendant did not testify in this case, I'll just ask you if you could follow the Judge's --" Petitioner's attorney then interrupted with an objection.  Petitioner contends that this was an improper comment on petitioner's Fifth Amendment right not to testify.  He also alleges that the court's delay in addressing the comment, as well as the curative instruction itself further violated petitioner's Fifth Amendment right.

---

[20] *See* note 8, *supra*, and accompanying text.

[21] Even if this claim were not procedurally barred, the claim is without merit due to the non-retroactivity to collateral proceedings doctrine of *Teague v. Lane*, 489 U.S. 288 (1989).  The Eleventh Circuit has held that *Powers* is a new rule and, thus, does not apply retroactively to claims raised on collateral attack.  *Farrell v. Davis*, 3 F.3d 370, 372 (11th Cir. 1993).  Petitioner's conviction became final on November 2, 1987. *Powers* was decided on April 1, 1991--more than three years after petitioner's conviction became final.  Thus, *Powers* does not apply to petitioner's claim raised here.

The test for determining whether counsel is improperly commenting on the failure of a defendant to testify is whether counsel's statement was either "manifestly intended or was of such character that a jury would rationally and necessarily take it to be a comment on the failure of the defendant to testify." *United States v. Dorsey*, 819 F.2d 1055, 1061 (11th Cir. 1987), *cert. denied*, 486 U.S. 1025 (1988) (*quoting United States v. Countryman*, 758 F.2d 574, 578 (11th Cir. 1985)); *see also Kennedy v. Dugger*, 933 F.2d 905, 915 (11th Cir. 1991) (citing *Dorsey*, 819 F.2d at 1061), *cert. denied*, 502 U.S. 1066 (1992). The court applies this standard by examining "the comment in context to evaluate the motive behind the statement and its impact on the jury." *Dorsey*, 819 F.2d at 1061.

The comment complained of was asked as a follow up question to a prospective juror who had stated to defense counsel that she had a "fixed opinion . . . as to [petitioner's] character." (Trial Record, Vol. 5, R-117 to R-118). After the objection, the prosecutor sought to withdraw the question, but defense counsel stated that he did not think that such a question could be withdrawn. The court allowed the prosecutor to withdraw the question, nonetheless. After the prosecutor had finished otherwise questioning that prospective juror, however, defense counsel returned to his motion with regard to the prosecutor's alleged comment on defendant's testifying. In proceedings outside the presence of any prospective jurors, the parties and the court discussed this question, and the prosecutor suggested a limiting instruction and questioning of the jurors to determine whether they could disregard the question. Thereafter, the court brought before it the seven prospective jurors who had heard the comment and repeated the question and then explained the constitutional right of a criminal

48

defendant to remain silent and not testify.  The court also explained that the exercise of this

right cannot be held against a criminal defendant.  The court then stated:

> The question I have at this time, ladies and gentlemen is can you
> put this statement out of your mind, and I'm going to ask each of
> you individually if you can render a decision based solely on the
> evidence that comes to you from the witness stand and also
> according to the law as this Court instructs you at the conclusion
> of all of the testimony.
>
> Can you render a judgment which is fair and impartial
> based solely on the evidence and according to the testimony that
> comes from the witness stand and according to the law as the
> Court instructs you if you are chosen as a juror in this case?

(*See* Trial Record, Vol. 5, R-117 to R-123).  All seven of the prospective jurors answered

"yes."  After a request from the prosecutor, the court then asked a follow-up question: "Can

you exclude that statement from your mind and render a judgment or verdict in this case based

solely on the evidence that comes to you from the witness stand and solely on the law as the

Court instructs you?"  To this question, all seven jurors nodded their heads in the affirmative.

(*See id.*)

The court is of the opinion that this question by Mr. Rumsey did not infringe upon

petitioner's Fifth Amendment right not to testify.  Mr. Rumsey was not intentionally

commenting negatively on petitioner's right not to testify.  Furthermore, all seven of the

prospective jurors that heard the comment were struck from the panel--six for cause and one

by petitioner's peremptory challenge.  (Trial Record, Vol. 5, R-165, R-169 to R-170; Vol. 1,

at 140-41).  Thus, the question was not posed in the presence of any actual juror in the case.

Finally, the judge's instruction and questioning of the jurors ensured that no prejudice would

arise from the question as to the petitioner. Therefore, petitioner has failed to show prejudice

resulting from the alleged constitutional violation, and petitioner is not entitled to habeas relief

on this claim.

     L.     The trial court's refusal to challenge for cause prospective juror Jimmy
          Chastain, a reserve Talladega County deputy sheriff who investigated the crime,
          denied John Peoples a fair trial and a reliable sentencing procedure guaranteed
          by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States
          Constitution.

Petitioner alleges that the trial court committed constitutional error when he denied

petitioner's challenge for cause of prospective juror Jimmy Chastain, a reserve deputy sheriff,

who rode to the crime scene with the sheriff.[22]

The record clearly establishes that petitioner used his first peremptory challenge to

strike to juror Chastain (Trial Record, Vol. 1, at 140-41). In *Ross v. Oklahoma*, 487 U.S. 81,

(1988) the Supreme Court held that the fact that a defendant was required to use a peremptory

challenge to cure a trial court's failure to remove a juror for cause did not violate either the

Sixth Amendment right to an impartial jury or the Fourteenth Amendment right to due

process. *Id.* at 88-89. The court held that: "so long as the jury that sits is impartial, the fact

that defendant had to use a peremptory challenge to achieve that result does not mean that the

Sixth Amendment was violated." 487 U.S. at 88. *See also Heath v. Jones*, 941 F.2d 1126

(11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992). Petitioner has not argued that the jury

_____

[22] On direct appeal this claim was presented as a state law claim, and only state court cases
were cited in support of this claim. Although this fact raises some question as to whether these
federal constitutional claims are procedurally barred, *see Duncan v. Henry*, 115 S. Ct. 887, 888
(1995), respondents have not so argued. Thus, the court will address these claims.

was not impartial, nor has he alleged any acts which would support such a claim. Hence, petitioner's Sixth Amendment claim must fail.

To the extent that petitioner seeks to base this claim on the due process clause, the court concludes that it is likewise without merit. The Supreme Court in *Ross* held that the due process challenge failed because petitioner received all of the peremptory challenges required by state law, and petitioner used one of the peremptory challenges to rectify the trial court's error. 487 U.S. at 90. In this case, petitioner was afforded twenty-four peremptory strikes, twelve more than the minimum required by state law. Ala. Code § 12-16-100. Petitioner's due process claim therefore fails.

Because petitioner's claim fails to state a Sixth or Fourteenth Amendment violation and petitioner has failed to argue how this claim would violate his Fifth or Eighth Amendment rights, the court concludes that petitioner is not entitled to habeas relief on this claim.

M.   John Peoples was illegally arrested in the early afternoon of July 11, 1983, outside Wesson's Pharmacy in Childersburg, Talladega County, Alabama, and all evidence subsequently obtained as the fruit of that unlawful arrest must be suppressed as violative of his Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution.

Petitioner alleges he was illegally arrested on July 11, 1983 at Wesson's Pharmacy and was then escorted to the Childersburg Police Department. Petitioner argues that due to his illegal arrest all evidence subsequently obtained, including his "tag receipt and bill of sale for the Corvette, his subsequent statements, the Corvette, his clothing and boots and his directions to the crime scene and location of the victim bodies, as well as the resulting forensic examination and scientific analysis," was constitutionally inadmissible.

Respondents argue that the claim that petitioner was illegally arrested on July 11, 1983 and thus all evidence obtained as the fruit of that arrest should have been suppressed is precluded from federal habeas review pursuant to *Stone v. Powell*, 428 U.S. 465 (1976). In that case, the United States Supreme Court held:

> where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Id.* at 494; *see Devier v. Zant*, 3 F.3d 1445, 1455 (11th Cir. 1993), *cert. denied*, 115 S. Ct. 1125 (1995); *Tukes v. Dugger*, 911 F.2d 508, 511 (11th Cir. 1990), *cert. denied*, 502 U.S. 898 (1991).

In response, petitioner argues that he was not afforded a full and fair opportunity to litigate the issue of the legality of his arrest. Specifically, petitioner contends that the subject of the suppression hearing was a misdemeanor arrest warrant which had been used by the state as a premise for placing "a hold" on petitioner to effectuate petitioner's initial arrest and custody. Petitioner further alleges that at the suppression hearing the state withheld evidence that the misdemeanor warrant was backdated.

The court has reviewed the record to determine whether petitioner was afforded a full and fair hearing to litigate this claim. After conducting the suppression hearing, (*see* Trial Record, Vol. 8, R-665 to R-733), the trial court entered a detailed order, (Trial Record, Vol. 1, at 167-175), stating the following, in pertinent part:

> The Court, based upon the foregoing findings of fact, further finds that there was sufficient probable cause to arrest the

52

> defendant, without a warrant of arrest, for Theft, a felony
> charge, on July 11, 1983.

(Trial Record, Vol. 1, at 174).

Although the trial court made detailed findings of fact concerning the events of July 11, 1983, the court's order was unclear as to precisely when the arrest occurred. The opinions of the appellate courts, however, state that an arrest did not occur when petitioner was confronted in the store in Childersburg.

The trial court found that there was probable cause to arrest petitioner without a warrant for felony theft; therefore, whether the misdemeanor theft warrant was backdated would have no effect on the trial court's holding as the trial court did not find probable cause based on the misdemeanor warrant.[23] Because the misdemeanor warrant was not the basis of the trial court's probable cause finding, the court concludes that the petitioner's subsequent discovery that the misdemeanor warrant had been backdated does not require this court to determine that petitioner was not given an opportunity to fully and fairly litigate, particularly

---

[23] This court's conclusion is supported by the order denying the motion for new trial in which the trial court stated in pertinent part:

> The Court further finds that the defendant was never told he was under arrest for the worthless check warrant and to the contrary, when the defendant asked if he was being arrested, Chief Finn told him no. The Court under Alabama Law could not have considered this to be an arrest and in the Court's order of January 23, 1984, this was not considered by the Court to justify an arrest or detention; but, the Court's ruling was based upon arrest without a warrant, for Theft First Degree and based upon sufficient probable cause, as heretofore set forth.

(Trial Record, Vol. 1, at 213-14).

53

in light of the fact that both the Court of Criminal Appeals and Supreme Court were given an opportunity on direct review to address the illegal arrest claim. Neither the trial court nor the state appellate courts relied upon the misdemeanor theft warrant in any way. The Court of Criminal Appeals, on direct appeal, held that petitioner was not arrested in Wesson's parking lot. According to the court, he was arrested after blood-stained blue jeans were found in his apartment. Thus, the court found that probable cause existed for his arrest. Therefore, the court concluded that the evidence obtained following his being stopped in Wesson's parking lot was admissible at trial. *Peoples*, 510 So. 2d at 569.

The Alabama Supreme Court reached a similar conclusion. The court found that petitioner was not arrested at the store in Childersburg, but the court held that the police were justified in stopping petitioner at that time because he was in possession of a car that had been reported stolen. The court further held that the actions of the police following their confronting petitioner in the parking lot of the store were also justifiable, including the detention of the petitioner at the Childersburg police station. Thus, the court concluded that the bill of sale and the tag receipt were properly obtained. Finally, the court held that the facts that "were uncovered as a result of information contained in the bill of sale supplied probable cause to arrest petitioner for theft of the automobile by deception. The evidence obtained as a result of the valid investigatory stop and the subsequent arrest of petitioner based on probable cause was properly admitted into evidence." *See Ex Parte Peoples*, 510 So. 2d at 575-77.

54

Because this claim pursuant to the Fourth Amendment, as made applicable to the states through the Fourteenth Amendment, was fully and fairly litigated in the state trial court and on direct review, it is precluded from review by this court. *Stone*, 428 U.S. at 494.[24]

    N.    The bill of sale and tag receipt for the corvette, obtained from John Peoples as a result of his custodial interrogation by Childersburg Police Chief Ira Finn without any warning or waiver of his constitutional rights under *Miranda v. Arizona*, 383 U.S. 436 (1966), violated John Peoples's Fourth, Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution.

Petitioner argues that his production of the bill of sale and tag receipt for the Corvette was tainted by the failure of Chief Finn to advise him of his *Miranda* rights and thus those papers should have been excluded presumably under the "fruits of the poisonous tree" doctrine. Nothing in the record indicates that petitioner was advised of his *Miranda* rights prior to producing the bill of sale and tag receipt to Chief Finn.

The record establishes that only the bill of sale was introduced into evidence at trial.[25]

The Court of Criminal Appeals addressed this issue as follows:

> The appellant does not contest the admissibility of the items on any grounds other than the allegedly improper arrest. Nevertheless, due to Rule 45A, A.R.A.P., we will address each item separately.

---

[24] Petitioner has repeated his Fourth Amendment claim in sections N through S based on the same set of facts as is alleged in this section. Due to the court's conclusion that the Fourth Amendment claim is precluded by *Stone v. Powell*, the court will not revisit the same claim below.

Further, the Fifth Amendment claim alluded to in this section will not be addressed here but, instead, will be addressed in sections N through S where the facts are more fully developed.

[25] The tag receipt was not admitted into evidence. The court need not address this portion of the claim, therefore, because no prejudice could arise as the result of an item not introduced into evidence.

> The bill of sale was obtained when the appellant was brought into
> the Childersburg Police Department and told the car had been
> reported stolen. The appellant responded by throwing onto a
> desk a purported bill of sale, and then what he claimed to be a
> tag receipt. Therefore, the documents were voluntarily produced
> and thus admissible as long as they were not produced pursuant
> to an illegal arrest.

510 So. 2d at 566.

Petitioner has raised this claim as a violation of his Fifth Amendment rights against
involuntary self-incrimination. *Miranda v. Arizona*, 384 U.S. 436 (1966), prohibits the
prosecution's use of statements, whether exculpatory or inculpatory, stemming from a
defendant's custodial interrogation, unless the prosecution demonstrates the use of effective
procedural safeguards to secure the privilege against self-incrimination. *Id.* at 444.
Specifically, *Miranda* requires a showing that the defendant was warned, prior to questioning,
that he has the right to remain silent, that any statement he makes may be used as evidence
against him and that he has the right to the presence of either an appointed or retained
attorney. *Id.*

An officer's obligation to administer *Miranda* warnings attaches only when a individual
is in custody. *Thompson v. Keohane*, 116 S. Ct. 457, (1995); *Illinois v. Perkins*, 496 U.S.
292, 296 (1990); *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). In *Thompson*, the
Supreme Court held that two discrete inquiries are essential to the determination of whether a
person is "in custody" for *Miranda* purposes. The first inquiry, which is distinctly factual, is
"'what were the circumstances surrounding the interrogation.'" *Thompson*, 116 S. Ct at 465
(citations omitted). The second inquiry, is whether a reasonable person in those circumstances
would have felt that he was "at liberty to terminate the interrogation and leave." *Id.* As to the

56

first part, the state courts' findings of fact are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Id*. The second question, however, is a "mixed question of law and fact," and it qualifies for independent review. *Id*.

With regard to the first inquiry, the Alabama Supreme Court found that, at the request and direction of the police, petitioner went to the Childersburg Police Department and that petitioner drove the car to the police station. 510 So. 2d at 576. There was no allegation by petitioner that he was handcuffed or otherwise restrained. The trial court in its order denying the motion to suppress specifically found that petitioner asked Chief Finn why he was arresting him and Chief Finn told petitioner that he was not under arrest. (Trial Record, Vol. 1, at 169).

Applying the second part of the test, in determining whether petitioner was in custody, the court must look at the objective circumstances of the interrogation. *See Stansbury v. California*, 114 S. Ct. 1526, 1529 (1994) (per curiam). A police officer's subjective view concerning whether an individual who is being questioned is a suspect or is in custody does not bear upon the question whether the individual is in custody for purpose of *Miranda*, except in some cases where the officer conveys such knowledge or belief to the individual being questioned. *Id*. at 1529-30. In determining whether an individual is in custody, "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam) (citation omitted).

The mere fact that petitioner was at the police station at the request of the police when he produced the documents does not dictate the result. *See California v. Beheler*, 463 U.S.

57

1121, 1125 (1983) (holding that *"Miranda* warnings are not required 'simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.'") (citation omitted). Further, in light of Chief Finn's statement to petitioner, a reasonable person would have felt that he was at liberty to terminate the conversation with Chief Finn and leave. In *Colorado v. Connelly*, 479 U.S. 157 (1986), the United States Supreme Court held that "[t]he sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion." *Id*. at 170. Here, petitioner has raised no allegation that Chief Finn resorted to physical or psychological pressure to obtain the documents from petitioner. Therefore, the court is of the opinion that under the objective circumstances, petitioner was not under arrest nor was there a "restraint on his freedom of movement of the degree associated with a formal arrest" when he produced the bill of sale to Chief Finn.

Further, even if petitioner had been in custody at the time he produced the documents, *Miranda* does not require that the documents be suppressed. The privilege against self-incrimination applies to testimonial communications rather than non-testimonial evidence. *See Fisher v. United States*, 425 U.S. 391, 408 (1976); *Schmerber v. California*, 384 U.S. 757, 764 (1966). Likewise a violation of *Miranda* requires only the exclusion of testimonial evidence and not non-testimonial evidence. *United States v. Bengivenga*, 845 F.2d 593, 600 (5th Cir. 1988), *cert. denied*, 488 U.S. 924 (1988); *Oregon v. Elstad*, 470 U.S. 298, 307 (1985).

In *Bengivenga*, the Fifth Circuit held that a bus ticket and baggage claim stubs that were linked to suitcases containing marijuana were non-testimonial physical evidence and thus not excludable even if obtained in violation of *Miranda*. *See also Fisher*, 425 U.S. at 414

("compliance with a summons directing the taxpayer to produce the accountant's documents . . . would involve no incriminating testimony within the meaning of the Fifth Amendment"). Hence, petitioner's Fifth Amendment claims must fail as the bill of sale is non-testimonial physical evidence and, thus, not excludable even if obtained in violation of *Miranda*.

In *Bengivenga*, the court also held that a violation of *Miranda*'s "prophylactic" procedures does not necessarily trigger the fruit of the poisonous tree doctrine. "The derivative evidence rule operates only when an actual constitutional violation occurs, as where a suspect confesses in response to coercion." *Id.* No evidence has been presented of coercion on the part of Chief Finn. In response to petitioner's question concerning what he was under arrest for, Chief Finn told him he was not under arrest but that the car petitioner had been driving had been reported stolen from Pell City, and three members of a family were missing. Petitioner then said "Well by god, I didn't steal the damn car. I've got a bill of sale for it." The Chief looked at the bill of sale and said "well that ain't much of a bill of sale. It's not notarized." Petitioner then said "Well, I've got a goddamn tag receipt." (Trial Record, Vol. 8, R-618). This conduct on the part of the Chief did not constitute coercion.

In summary, the court concludes that the police officers were not required to administer *Miranda* rights prior to the time petitioner produced the bill of sale as he was not in custody at that time. Further, even if petitioner had been in custody, the bill of sale should not have been suppressed because it was non-testimonial and was not "fruit of the poisonous tree." Thus, petitioner is not entitled to habeas relief on the Fifth Amendment claim.[26]

---

[26] As discussed in section M, the illegal arrest claim is precluded by the doctrine of *Stone v. Powell*.

O.    The identification of Timothy Gooden, obtained from John Peoples as a result
      of his custodial interrogation by Childersburg Police Chief Ira Finn without any
      warning or waiver of his constitutional rights under *Miranda v. Arizona*, 384
      U.S. 436 (1966), violated John Peoples's Fourth, Fifth, Sixth, and Fourteenth
      Amendment rights under the United States Constitution.

Respondents argue this claim is procedurally barred because it was not raised at trial,

on direct appeal or in the Rule 20 petition.  Petitioner argues that "this claim was part and

parcel of the claim with respect to the Corvette papers, which the State concedes is not

procedurally default[ed]."  The court has reviewed the record to clarify whether this claim was

raised in state court, and it is clear to the court that the identification of Timothy Gooden was

not raised in state court as an independent *Miranda* claim but, instead, was raised only as it

related to application of the independent source doctrine.[27]  The court concludes that the

discussion of the identification of Gooden in the independent source context does not rise to

the level of a fair presentation of the Fifth Amendment claim now before this court.  *See*

*Duncan v. Henry*, 115 S. Ct. 887, 888 (1995).  More than a similarity of claims is necessary

to exhaust, and the Gooden identification claim was not fairly presented in state court as a

*Miranda* claim.  Thus, the court is of the opinion that the Fifth Amendment claim is both

unexhausted and procedurally barred from further review in state court.  Therefore, petitioner

is procedurally barred from raising this claim in federal court.[28]  In addition, petitioner has

---

[27]    In the Rule 20 petition, petitioner alleged that his conviction was obtained by use of
evidence obtained pursuant to an unlawful arrest.  In support of that claim, petitioner did allege,
among other things, that a statement from petitioner that he had been to the victims' house with his
cousin, Timothy Gooden, was taken while he was unlawfully in custody.  Thus, the Gooden
identification was raised in the Fourth Amendment context, which this court has previously found to
be barred from review under *Stone v. Powell*.

[28]    *See* note 8, *supra*, and accompanying text.

failed to show cause and prejudice for this procedural default.  Finally, as noted above,

petitioner's Fourth Amendment claim is precluded from federal review under *Stone v. Powell*.

*See* section M.

P.   The car, papers, clothing, and boots, obtained from John Peoples as a result of his custodial interrogation by Childersburg Police Chief Ira Finn without any warning or waiver of his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), violated John Peoples's Fourth, Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution.

In the amended petition petitioner alleges:

After escorting John Peoples to the Childersburg Police Department, law enforcement authorities put him in a room with Chief Ira Finn.  John Peoples was not free to leave.  Chief Finn, overstating even the limited amount of information known to him, questioned John in respect of the Corvette which he said had been reported stolen from Pell City and the three Franklin family members who were missing.  Without receiving any warning of his *Miranda* rights, nor in any sense upon his waiver of those rights and constitutionally voluntary response, and upon advice of counsel which amounted to no advice at all, John Peoples responded to him and later responded to Alabama Bureau of Investigation officers.  In that course, the law enforcement officers seized the car, papers, clothing, and boots of John Peoples.

Respondents argue that this claim is procedurally barred from federal review because it was

not raised at trial, on direct appeal, or in the Rule 20 petition.  A review of the briefs indicates

that this claim was raised as a Fourth Amendment claim in state court.  Petitioner's Fourth

Amendment claim is precluded from federal review under *Stone v. Powell*.  Petitioner's claims

under the Fifth or Sixth Amendments or under *Miranda*, which have never been raised in state

61

court, are procedurally barred from federal review.[29]  Petitioner has failed to show cause and prejudice for his failure to raise this claim in state court.

Q.     The trial court committed error of constitutional dimension, having erroneously refused to grant the motion to suppress, by admitting into evidence all evidence obtained from the crime scene to which John Peoples had directed law enforcement authorities, in violation of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Petitioner alleges that he led law enforcement authorities to the scene of the crime and identified the location of the victim's bodies upon advice of counsel, without any *Miranda* warnings, and with "the unmistakable understanding that he was doing so pursuant to an agreement between his counsel and the state." According to petitioner, the agreement was that petitioner "agreed to give a complete statement, identify the whereabouts of the Franklin family and pass a polygraph test, in exchange for which no other charge would be made against him and his bond on the car theft charge, for which he was being held, would be reduced." Petitioner further alleges due to a dispute over the terms of the agreement, he did not submit to the polygraph test. Petitioner argues that the promise of immunity rendered his statement and testimonial actions involuntary and, thus, constitutionally inadmissible.

Respondents argue that the state courts' findings of fact on the issue of coercion are entitled to a presumption of correctness. Respondents further argue that "any breach of any agreement occurred due to [petitioner's] failure to maintain his part of the agreement." Respondents argue both that the evidence from the crime scene came from an independent source and that the bodies would have inevitably been discovered. While the trial court made

---

[29] *See* note 8, *supra*, and accompanying text.

both of these conclusions, the appellate courts concluded only that the evidence would have

been discovered through an independent source.

After a hearing on the motion to dismiss, (Trial Record, Vol. 2, R-16 to R-204; Trial

Record, Vol. 3, R-3 to R-144), the trial court made the following findings of fact relevant to

this issue:

> The Court having heard evidence offered by both parties on the
> defendant's motion to dismiss, and the Court having considered
> all that evidence including the demeanor of the witnesses, and
> having made decisions concerning the credibility of the witnesses,
> the Court now makes the following fact findings.

* * *

> On July 13, 1983, Assistant St. Clair County District
> Attorney, Dennis Abbott told Robbins that the defendant had told
> law enforcement officers earlier that he wanted to take a
> polygraph examination. After some discussion, Abbott informed
> Robbins that: if the defendant took a polygraph examination and
> it showed that he was telling the truth about how he came into
> possession of the Franklin automobile, the defendant could make
> bond; and further that if the State did not uncover any other
> evidence linking the defendant to the disappearance of the
> Franklins then at the preliminary hearing the defendant "probably
> would walk." Robbins replied that he would recommend taking a
> polygraph examination to his client. After this discussion, it was
> Robbins' understanding that under the proposed agreement if the
> polygraph examination showed his client was not involved in the
> disappearance of the Franklins or the theft of their automobile,
> and the State uncovered no further evidence linking him to the
> Franklins' disappearance, his bond would be reduced and no
> further charges would be brought against him. After this same
> discussion, that was also Abbott's understanding of the proposed
> offer, except that he did not understand it to be a term of the
> proposed agreement that bond would be reduced before the
> charges were ultimately dismissed. Robbins never communicated
> to Abbott any acceptance of either version of the terms by the
> defendant.

63

Thereafter, on the same date, Robbins and the defendant met with two law enforcement officers. Robbins told the law enforcement officers that the defendant had "more to add" and that he would take the officers to where the Franklins were. One of the officers asked, "All three?" The defendant replied: "All three, and all three are dead." Robbins then left the officers, went to see Abbott, and told Abbott the defendant wanted to make another statement and that all three of the Franklins were dead. During this conversation, there was some discussion about a polygraph examination, which led to such an examination being scheduled for July 15, 1983. However, there was no meeting of the minds concerning any agreement or proposed agreement involving any polygraph examination. The defendant then made a tape-recorded statement in the presence of his attorney. In that statement the defendant acknowledged knowing where the bodies were but claimed that he was not involved in the disappearance or murder of the Franklins.

After making the tape-recorded statement, and on the same date (July 13, 1983), the defendant, with his attorney's knowledge and consent, led law enforcement officers to the bodies of the Franklins, which were in Talladega County.

On the morning of July 15, 1983, Robbins took to Abbott a proposed agreement, which was admitted as Defendant's Exhibit No. 2 at this hearing. Abbott refused to sign the proposed agreement he had offered Robbins on July 13, 1983, nor any other agreement or proposed agreement to which he had been a party.

On the afternoon of July 15, 1983, the defendant was taken to Gadsden for the polygraph examination which had been previously scheduled. Robbins was present and so was Talladega County District Attorney, Robert Rumsey who had jurisdiction over prosecution of the case involving the murder of the Franklins because their bodies were found in Talladega County. Robbins told Rumsey there had been agreement entered into in the case involving the polygraph examination, and he showed Rumsey Defendant's Exhibit No. 2 which Abbott had refused to sign. This was the first time Rumsey had heard about any proposed agreement or seen the written document. After noticing that the proposed agreement had not been signed and learning from Robbins that there was some dispute about its terms and that

Dennis Abbott had refused to sign the proposed agreement, Rumsey told Robbins he wanted to meet with everyone with any knowledge of the proposed agreement, talk with them, and find out exactly what had taken place in regard to any agreement.

Rumsey said the polygraph examination could be re-scheduled for Saturday, the next day, or Sunday or Monday. Robbins then called Abbott who told Rumsey that Defendant's Exhibit No. 2 was not the proposed agreement. Then Robbins and Abbott argued with each other over the telephone. Following that phone conversation, Robbins acknowledged to Rumsey that Defendant's Exhibit No. 2 did not correctly state the terms of the agreement. Rumsey then told Robbins that he could not expect Rumsey to be bound by any agreement between Robbins and Abbott when they could not even agree between themselves as to what the terms had been, and Robbins concurred. Rumsey also told Robbins that if Defendant's Exhibit No. 2 was the agreement, Rumsey would have been no part of it and St. Clair County District Attorney's Office would have to handle the case.

Robbins asked Rumsey what they could work out so the polygraph examination could be done that same day. He asked Rumsey what he would agree to then and there concerning the polygraph examination. Rumsey said that what he would agree to, without investigating any further the dispute over the alleged agreement, was to present the results of the polygraph examination and the polygraph operator to the grand jury, along with Abbott to testify about the disputed terms of the proposed agreement and let the grand jury make a determination. Robbins said that was good enough for him.

Robbins then went and discussed the matter with the defendant. Robbins, Rumsey, and others then left for supper and the defendant was going to take the polygraph examination while they were out. The defendant did go to the examination room and the pre-test examination began; however, after talking with the examiner, the defendant refused to take the polygraph examination. He told the examiner he wanted two questions asked: did he kill all of the Franklins at the same time; and did he kill all of them at their house. The examiner told the defendant those would not be the questions. The examiner told him the questions would be: did he take the Franklin family from their

65

house that night; did he hit Judy Franklin in the head last week; were you physically present when Judy Franklin was hit in the head; and do you know for sure who hit Judy Franklin. The defendant then said he was having trouble remembering if he committed the crime. After further discussion during which the examiner told the defendant that if he lied during the examination the test would show it, the defendant refused to take the polygraph examination. During the course of that discussion the defendant acknowledged to the examiner that the story defendant had told was false. The reason the defendant refused to take the polygraph examination was that he knew or believed the examination would show that the story he had been telling that he was not involved in the murders was false and would show that in fact he was involved in the murders.

In conclusion, this Court finds that no agreement was ever reached on July 13, 1983, between the State of Alabama and the defendant concerning the defendant taking a polygraph examination. While a proposed agreement was discussed on that date by an assistant district attorney and counsel for the defendant, there was never any meeting of the minds on its specific terms. Nor was there ever any communication of acceptance of any of the terms discussed on that date. In any event, a common term of all the proposals and one understood by all parties was that any agreement was contingent on the defendant taking a polygraph examination and on that examination establishing that he was not involved in the disappearance and murders of the Franklins. The defendant ultimately refused to take such a polygraph examination. On July 15, 1983, another proposed agreement concerning a polygraph examination was offered the defendant by a district attorney, but the defendant's refusal to take the examination after that offer was made amounted to a rejection of the offer; or, if there was ever an acceptance of it, his refusal to take the examination amounted to a material breach of the agreement's terms. None of the officers, officials, or other representatives of the State of Alabama violated any agreement with the defendant, revoked or attempted to revoke any agreement with the defendant, or engage in any trickery, deceit, or sharp practices involving him.

(Trial Record, Vol. 1, at 103-109).

66

The trial court in its order denying the motion to suppress made the following

additional findings of fact:

> The Court finds further that Timothy Gooden took the
> defendant to the Franklin residence on July 6th, 1983, and that
> Timothy Gooden was a co-conspirator with the defendant in this
> crime. On July 14th and 15th, 1983, that Timothy Gooden led
> Sheriff Studdard and other law enforcement officials to a location
> off Highway 377 in Talladega county, where the bodies of Paul,
> Sr., Paul, Jr., and Judy Franklin had been found on July 13th,
> 1983, at approximately 6:30 p.m., hereinafter referred to, as the
> scene. The Court further finds that Timothy Gooden did not
> receive any information, either directly or indirectly from law
> enforcement officers, that aided him in leading law enforcement
> officers to said location. The Court further finds, based on the
> foregoing finding of facts, that the knowledge of the location of
> the scene was derived solely by Timothy Gooden from his
> participation in said crime with the defendant on the night of July
> 6th, 1983, and the early morning hours of July 7th, 1983.

> The Court further finds that the body of Paul, Sr. was
> clad in yellow pajamas and was situated approximately 80 to 90
> feet from the southern edge of Talladega County Road #377,
> being the location that Timothy Gooden led Sheriff Jerry
> Studdard to in the early morning hours of July 15th, 1983. That
> the body of Judy Franklin was clad in a robe, bright pink in color
> and was situated approximately 120 feet from the southern edge
> of said road. The body of Paul, Jr. was clad in a red jogging suit
> and was at the side of his mother, Judy Franklin. All of the
> bodies of the Franklins were found at the scene.

> The Court further finds that said bodies were in a flat
> sparsely wooded area containing little or no vegetation and the
> road bed was built higher than the area where said bodies were
> situated. Electric power lines and gas pipe right-of-ways were
> near the said area. The said Talladega County Road #377 was a
> well traveled and improved paved public road, and that people
> frequented said area. The Court further finds that a lady rode her
> horse in or near said area and that people dump trash in or near
> said area and that hunters frequented said area and that people
> drove farm equipment up and down said Highway 377, in the
> area.

> The Court personally viewed said area in the presence of
> counsel for the defendant, and the defendant and based upon the
> aforesaid facts and viewing of said area, the Court finds that the
> bodies would have been viewable ultimately from said Talladega
> County Road #377 and said bodies would have been inevitably
> discovered.

(Trial Record, Vol. 1, at 173-74).

The Court of Criminal Appeals held that it need not determine whether petitioner was

induced to involuntarily give a statement and lead authorities to the bodies of the Franklins.

The court held that because the statement was not used against petitioner at trial and Gooden

was an

independent source for the evidence from the crime scene, plaintiff's argument that the

evidence was the fruit of the poisonous tree was unavailing. Specifically, the court held,

> that Mr. Gooden's assistance was an independent source as
> contemplated by that doctrine. "[O]ur cases make clear that
> evidence will not be excluded as 'fruit' unless the illegality is at
> least the 'but for cause of the discovery of the evidence.'"
> *Segura v. United States*, 468 U.S. 796; 104 S. Ct. 3380, 3391,
> 82 L.Ed.2d 599 (1984). Even if evidence is acquired
> improperly, that "does not mean that the facts thus obtained
> become sacred and inaccessible. If knowledge of them is gained
> from an independent source they may be proved like any
> others...." *Silverthorne Lumber Company, Inc. v. United States*,
> 251 U.S. at 392, 40 S. Ct. at 183.

*Peoples*, 510 So. 2d at 569-70. The court further held that its prior determination that the

appellant's arrest was based on probable cause foreclosed the appellant's claim that the

independent source doctrine was inapplicable. *Id*. at 570.

Similarly, the Alabama Supreme Court in affirming petitioner's conviction held that

regardless of whether any promise or agreement was made, the evidence from the scene where

the bodies were found was admissible because Timothy Gooden independently led police to the

location where the bodies had been previously found on the basis of petitioner's statement. In

other words, the court held that the "evidence would have been discovered through Timothy

Gooden as an independent source." *Ex Parte Peoples*, 510 So. 2d at 577 (citation omitted).

The court further held that "[p]etitioner's contention that Gooden cannot be an independent

source because his name was revealed as a result of an illegal arrest has no merit in light of

our determination that petitioner's detention and arrest were valid." *Id*. at 577-78.

The court is of the opinion that the state court findings of fact are entitled to a

presumption of correctness as they are supported by the record. The court, therefore,

concludes, as did the state trial and appellate courts, that regardless of whether an agreement

rendered petitioner's statement and actions in leading authorities to the crime scene

involuntary, the evidence would have been discovered through Gooden, an independent

source. The trial court specifically found that Gooden did not receive any information from

law enforcement officers that aided him in leading law enforcement officers to the location

where the bodies were found and that Gooden's knowledge of the crime scene location was

derived solely from his participation in the crime. Thus, the evidence was admissible, *see*

*Segura v. United States*, 468 U.S. 796 (1984) (holding evidence admissible because

exclusionary rule does not apply where evidence is procured from a source independent of any

illegal police conduct), and petitioner is not entitled to habeas relief on this claim.

To the extent that petitioner attempts to assert a Sixth Amendment claim, the court has

already addressed the ineffective assistance of counsel claims which were raised in petitioner's

amended petition. *See* sections B and G.

R.     John Peoples's rights under the Fourth, Fifth, Sixth, and Fourteenth
       Amendments to the United States Constitution were violated by the admission
       into evidence at trial of his illegally obtained statement on July 19, 1983.

On July 19, 1983, petitioner wrote a note, in the presence of sheriffs Brown and

Studdard, that stated: "The case I am in I did do it.  Concerning the Franklin family I did do

it." *See Peoples*, 510 So. 2d at 561.  Petitioner argues in the amended petition this statement

should not have been admitted as evidence in his trial because sheriffs Brown and Studdard

spoke to petitioner without the presence of counsel, even though they were aware that

petitioner was represented by Ray Robbins, who was out of town, and petitioner had stated he

wished to talk to another attorney named George Sims.

Petitioner asserts that he did not intelligently waive his right to counsel and thus this

statement was taken in violation of *Edwards v. Arizona*, 451 U.S. 477 (1981), and *Davis v.*

*United States*, 114 S. Ct. 2350 (1994).  In denying relief, the trial court and the Alabama

Court of Criminal Appeals rendered its findings of fact, which are presumptively correct and

binding on this court.  28 U.S.C. § 2254(e) (according presumption of correctness to a state

court's determination of factual issues and allowing rebuttal of this presumption only when

warranted by clear and convincing evidence); *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)

(interpreting predecessor to 28 U.S.C. § 2254(e) as attaching presumption of correctness to

findings by state *appellate* courts in addition to state trial courts).  Furthermore, the court is of

the opinion that the findings set out below are fairly supported by the record.

After a hearing, the trial court found that the July 19, 1983, statement was knowingly

and voluntarily given based on the following facts:

70

The Court finds that on July 16th, 17th and 18th that law enforcement officers did not talk with the defendant. That on July 19th, 1983, that the defendant sent a note to Sheriff Lewis Brown of St. Clair County that he wanted to talk with him. That at approximately 9:00 p.m. o'clock on July 19th, 1983, that Sheriff Lewis Brown talked with the defendant at the St. Clair County Sheriff's office in Ashville, Alabama. Sheriff Brown told the defendant to call his attorney, Ray Robbins. That the defendant called Ray Robbins and upon being told that he was not home, Sheriff Brown asked the defendant if there was anyone else that he might call. The defendant indicated that he might call George Sims, an attorney in Talladega, and Sheriff Brown looked up George Sims' telephone number and gave the number and the telephone to the defendant. Sheriff Brown told the defendant to call George Sims and the defendant then said, "I do not need a lawyer." Sheriff Jerry Studdard of Talladega County came to the jail and the defendant told Sheriff Studdard that he wanted to talk with him too. At that time Sheriff Lewis Brown and Sheriff Jerry Studdard advised the defendant of each of his rights, as required by the Miranda decision, and the Court finds that the defendant understood each of his rights and knowingly and voluntarily waived said rights. In fact, in the process, when Sheriff Brown was advising the defendant of his rights, the defendant said, "I've heard those a hundred times" and Sheriff Brown said, "That doesn't matter, I'm still going to read them to you." The Court finds that the defendant did seek out law enforcement officers, by sending a note to Sheriff Brown, and requested that they talk with him. That the defendant was afforded every opportunity to contact his retained attorney or any other attorney that he might desire and that he told Sheriff Brown and Sheriff Studdard that he did not need a lawyer and he voluntarily and knowingly talked to Sheriff Brown and Sheriff Studdard after waiving said rights and that the statement written by the defendant in his own handwriting on July 19, 1983, was made after a knowingly and voluntarily waiving of his Miranda rights.

(Trial Record, Vol. 1, at 171-72).

The Alabama Court of Criminal Appeals made similar findings of fact:

The appellant contends that his July 19 confession was inadmissible because he did not voluntarily waive his right to

71

> counsel. While in jail on July 19, four days after refusing to
> answer the four "relevant" questions during the polygraph
> examination, the appellant sent a note to the sheriff saying he
> wanted to talk. The sheriff told the appellant to call his lawyer.
> The lawyer was not home, so the sheriff asked the appellant
> whether there was another lawyer to whom the appellant would
> talk. Before a second lawyer was called, the appellant said, "I
> don't need a lawyer. I'll just talk to y'all." the sheriff advised
> the appellant about his entire *Miranda* rights, even though the
> appellant had interrupted, saying he knew them. When again
> asked if he wanted to call a lawyer, the appellant said "No, I
> don't want to call a lawyer, I just want to talk to y'all." He then
> admitted to killing the Franklins, and said that he was relieved to
> tell the officers.

*Peoples*, 510 So. 2d at 570.   Citing *Edwards v. Arizona*, the court then stated: "It is clear that

the appellant, not the police, was the one who initiated the conversation on July 19." *Id*. The

court further noted that, "the police knew the appellant had counsel and attempted to respect

that relationship by trying to call that attorney before agreeing to talk to the appellant." *Id*.

Thus, the court held that petitioner "voluntarily, knowingly, and intelligently waived his right

to counsel." *Id*. (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)).

In *Edwards v. Arizona*, 451 U.S. 477 (1981), the Supreme Court held that the Fifth

Amendment requires that,

> an accused . . . having expressed his desire to deal with the
> police only through counsel, is not subject to further interrogation
> by the authorities until counsel has been made available to him,
> **unless the accused himself initiates further communication,
> exchanges, or conversations with the police**.

*Id*. at 484-85 (emphasis added).   Although petitioner had asserted his right to counsel during

interrogation, (see section B, *supra*), petitioner then waived his previously invoked right to

counsel on July 19, 1983.   The findings of fact by the state court establish that petitioner

72

initiated communication with law enforcement officials by sending a note to the sheriff saying

he wanted to talk. Further, when petitioner was unable to reach his lawyer, he stated "I don't

need a lawyer." The sheriff then advised petitioner of his *Miranda* rights and petitioner stated

"No, I don't want to call a lawyer, I just want to talk to ya'll." This was a clear and

unambiguous waiver of petitioner's previously invoked right to counsel. *See Henderson v.*

*Singletary*, 968 F.2d 1073-75 (11th Cir. 1992), *cert. denied*, 506 U.S. 1007 (1993) (holding

that "[w]here a suspect changes his mind with regard to giving a confession to the police--even

after an invocation of the right to counsel--the confession is admissible"); *Moore v. Dugger*,

856 F.2d 129, 133 (11th Cir. 1988).

Petitioner voluntarily waived his right to counsel, and the statement, therefore, was not

given in violation of *Miranda* or *Edwards*. Thus, the statement was constitutionally

admissible, and petitioner is not entitled to habeas relief.

S.     John Peoples's rights under the Fifth, Sixth, Eighth, and Fourteenth
       Amendments to the United States Constitution were violated by the admission
       into evidence at trial of his illegally obtained statement and his location of the
       purported murder weapon on July 22, 1983.

On Friday, July 22, 1983, after petitioner was transferred from St. Clair County jail to

Talladega County jail, he told two deputies and Talladega County Sheriff Studdard that he

would show them where the .22 rifle was, and he subsequently led them to a location in the

Brecon area, where he found for them a bent and broken rifle wrapped in a towel and

concealed in some bushes. The rifle was later linked to items found at the crime scene, to shot

recovered from Judy Franklin's body, and to the head injuries inflicted upon Judy Franklin and

Paul Franklin, Jr. *See Peoples*, 510 So. 2d at 561. Petitioner argues that his statement that he

73

knew where the rifle was and his subsequent revelation of that location were not the product of

his knowingly, voluntarily, and intelligently waiving his right to counsel under *Edwards v.*

*Arizona*, 451 U.S. 477 (1981), and the Fifth, Sixth and Fourteenth Amendments to the United

States Constitution.

The court is of the opinion that this claim is procedurally barred from federal review.

The facts that are the basis of this issue were not presented on direct appeal, in the Rule 20

petition or on appeal from the denial of the Rule 20 petition. Further, these facts were not

specifically stated in the motion to suppress. (Trial Record, Vol. 1, at 99-102). These facts

were argued at the motion to suppress hearing, (Trial Record, Vols. 8 and 9, R-778 to R-811),

and the trial court made findings with regard to this argument. (*See* Trial Record, Vol. 1, at

172,174).

The court is of the opinion that the present argument is procedurally barred because it

was not argued to any appellate court. In *Collier v. Jones*, 910 F.2d 770 (11th Cir. 1990), the

Eleventh Circuit addressed a similar situation in which a petitioner raised two of his habeas

claims in his state coram nobis petition but did not argue them to the court of appeals on

appeal of the state court's denial of that petition. The Eleventh Circuit held that petitioner's

two claims were, therefore, not fully exhausted because the state court, which is "usually the

final arbiter of such collateral attacks on criminal convictions[,] was not afforded a fair

opportunity to rule on them." *Id.* at 773. Thus, the court concluded that the two claims were

procedurally barred because they were unexhausted and petitioner would be barred from

raising them in state court. *Id.*

Based on *Collier*, the court is of the opinion that petitioner's present claim is

procedurally barred from federal review as the claim was not presented to the state appellate

court, and petitioner has failed to show cause and prejudice for the procedural default. Thus,

petitioner is not entitled to habeas relief on this claim.

> T.    The state's conduct in seizing a tape recorder belonging to defense counsel's
>        investigator and previously provided to John Peoples for his use in preparing his
>        defense and communicating with counsel violated John Peoples's Sixth
>        Amendment right to counsel and Fifth and Fourteenth Amendment rights to due
>        process and required dismissal of the indictment.

Petitioner argues that the state's conduct in seizing the tape recorder provided to

petitioner by counsel for purposes of aiding in his defense constituted an "intrusion into the

innermost strategies and confidences of the attorney-client relationship" and violated his right

to counsel and right to due process. Petitioner further argues that this violation could only be

remedied by a dismissal of the indictment which the trial court unconstitutionally denied.

On November 27, 1983 petitioner filed a Motion to Dismiss or [in the alternative] a

Motion to Continue based on the facts in this claim. (Trial Record, Vol. 1, at 150-51). The

court heard evidence on this motion. (Trial Record, Vol. 5 and 6, R-182 to R-327). On the

record, the court denied the motion without elaboration and indicated that it would enter a

formal order and findings. (Trial Record, Vol. 6, R-332 to R-333). The record does not

indicate that a formal order and findings were entered.

The Alabama Court of Criminal Appeals stated the following concerning this claim:

> The appellant claims that the jailers seized a tape recorder
> provided to him by his counsel "for the purpose of dictating notes
> and messages." He contends that the seizure violated his Sixth
> Amendment right to counsel.

During a visit with the appellant, his mother gave him a
micro-cassette tape recorder provided by defense counsel. When
the appellant was being searched after the visit, he emptied his
pockets, except for the pocket where the recorder was concealed.
The officers told him to remove the item, but the appellant
attempted to run. He was caught and the tape recorder was
seized. It was searched and returned to the appellant after about
ten minutes.

"Prison officials must be free to take appropriate actions
to ensure the safety of inmates and corrections personnel . . . ."
*Bell v. Wolfish*, 441 U.S. at 547, 99 S. Ct. at 1878. "The
curtailment of certain rights is necessary, as a practical matter, to
accommodate a myriad of 'institutional needs and objectives' of
prison facilities, . . . chief among which is internal security."
*Hudson v. Palmer*. 104 S. Ct. at 3199. The fact that at the time
of the seizure the appellant was a pre-trial detainee, as opposed to
a convicted prisoner, is immaterial. "Indeed, it may be that in
certain circumstances they present a greater risk to jail security
and order." *Bell v. Wolfish*, 441 U.S. at 546, fn. 28, 99 S. Ct. at
1878, fn. 28. "[C]entral to all other corrections goals is the
institutional consideration of internal security within the
correctional facilities themselves." *Pell v. Procunier*, 471 U.S. at
817, 94 S. Ct. at 2800. Therefore, the seizure, and immediate
return, of the tape recorder did not violate the appellant's right
counsel.

*Peoples*, 510 So. 2d at 570-71 (alterations in original).

The findings of fact included in the above quote by the Court of Criminal Appeals are

entitled to a presumption of correctness as they are supported by the record. The trial court

record reflects that Cecil Miller, jailer at the Talladega County Sheriff's Department, testified

that on November 27, 1983, petitioner was searched following visitation and refused to give

the jailers something in his front pocket. (Trial Record, Vol. 5, R-187). Jailers forcefully

took the tape recorder, (Trial Record, Vol. 5, R-188), and it was held for approximately ten

minutes. (Trial Record, Vol. 5, R-190). Robert Milam testified that he "searched" the tape

player prior to returning it to petitioner.  (Trial Record, Vol. 6, R-215).  He explained that, "[w]e opened it and took the tape out and looked in where the tape was and put the tape back in, took the back off of it and closed it back up."  (Trial Record, Vol. 6, R-216).

Assuming, *arguendo*, that the ten minute seizure involved some deprivation of rights under the Sixth Amendment, the Supreme Court has held that remedies for such violations "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests."  *United States v. Morrison*, 449 U.S. 361, 365-66 (1981).  Unless the constitutional infringement "has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense," no basis exists for imposing a remedy in that proceeding, "which can go forward with full recognition of the defendant's right to counsel and to a fair trial."  *Id*.  As the Supreme Court went on to state, "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate."  *Id*.  *See also United States v. Sims*, 845 F.2d 1564, 1569 (11th Cir.) (holding that absent demonstrable prejudice, dismissal was plainly inappropriate as a remedy for a Sixth Amendment violation) (citation omitted), *cert. denied*, 488 U.S. 957 (1988).

In the present case, petitioner has failed to show how the confiscation of the tape recorder for a period of approximately ten minutes prejudiced his ability to communicate with counsel or the ability of counsel to provide adequate representation in petitioner's criminal proceedings.  Thus,  petitioner is not entitled to any remedy, including dismissal of the indictment.

Furthermore, petitioner has failed to allege sufficient facts to state a Sixth Amendment

claim of denial of the right to counsel. In *Herring v. New York*, 422 U.S. 853, 858 (1975),

the Supreme Court held:

> The right to the assistance of counsel has thus been given a
> meaning that ensures to the defense in a criminal trial the
> opportunity to participate fully and fairly in the adversary fact
> finding process.

Petitioner has failed to allege with specificity how the confiscation of the tape recorder

deprived the defense of "the opportunity to participate fully and fairly in the adversary

factfinding process." 422 U.S. at 858.

Further, to the extent that petitioner argues that he was denied due process due to

prosecutorial misconduct, the court has previously found this issue to be procedurally barred

from federal review. *See* section F.

    U.    The trial court's refusal to quash the prosecution's subpoena of defense
          counsel's investigative assistant for the entire duration of the trial intruded on
          John Peoples's Sixth Amendment right to counsel and deprived him of his Fifth
          and Fourteenth Amendment rights to due process.

Petitioner complains that the trial court refused to quash the subpoena of Christine

Wedaman, an employee of defense counsel's private investigator, and that, therefore, a "key

member" of the defense team remained under the state's subpoena for the entire duration of the

trial. Petitioner argues that the presence of the subpoena interfered with John Peoples's Sixth

Amendment right to counsel and his Fifth and Fourteenth Amendment rights to due process.

Petitioner has failed to allege how the refusal to quash the subpoena directed to

Wedaman interfered with defense counsel's ability to provide adequate representation in

petitioner's criminal proceedings.

On November 29, 1983, the prosecutor filed a petition in open court alleging that Christine Wedaman, an employee of the private investigator hired by petitioner, had attended a pretrial conference in which the state's evidence in petitioner's case was reviewed. The prosecution also issued a subpoena to Ms. Wedaman which the defense moved to quash. At the November 29, 1983, hearing, Ms. Wedaman testified that she had been hired by the private investigator about three and one-half weeks previously, (Trial Record, Vol. 6, R-299), and that she had attended a meeting in October, 1983, at which the forensic evidence in the case involving the Franklins' murders had been discussed. (Trial Record, Vol. 6, R-300 to R-301). She further testified that she had expressed a desire to know more about the case involving the Franklins' deaths. (Trial Record, Vol. 6, R-303). She denied, however, giving any of the information that she had learned to either her employer or defense counsel. (Trial Record, Vol. 6, R-305).

After hearing the evidence, the trial court refused to quash the subpoena issued by the state to Ms. Wedaman because "[i]t may very well be that she may have to be a witness and her subpoena will be sufficient." The trial court, however, allowed Ms. Wedaman to remain in the courtroom, even though she was a potential witness. (Trial Record, Vol. 6, R-336).

Petitioner's vague allegations regarding the subpoena and the trial court's refusal to quash it are not supported by the record. As in section T, petitioner has failed to allege with specificity how the subpoena issued to Ms. Wedaman deprived the defense of the opportunity to participate fully and fairly in the adversary factfinding process. *See Herring*, 422 U.S. at 858.

79

To the extent that petitioner argues that he was denied due process by prosecutorial

misconduct,[30] the court has previously found the issue of prosecutorial misconduct to be

procedurally barred from federal review. *See* section F.  Thus, petitioner is not entitled to

relief on this claim.

V.   The trial court acted improperly and committed reversible error of constitutional
     dimension by admitting, without any witness and opportunity for
     constitutionally mandated confrontation, a ten-year-old, unauthenticated hospital
     record to connect one victim to the purported murder weapon, in violation of
     John Peoples's rights under the Fifth, Sixth, Eighth and Fourteenth
     Amendments to the United States Constitution.

The petitioner argues that he was deprived of his rights to a fair trial and confrontation

by the trial court's admission of a ten year old hospital record of Judy Franklin, which was

used to prove the blood type of one of the victims.

The obstetrical record of Judy Franklin reflected "laboratory findings Blood type O Rh

pos." The prosecutor made a showing that due to the ten year passage of time, they were

unable to obtain the doctor's record because he no longer had the records. (Trial Record, Vol.

11, R-1392; Vol. 12, R-1412 to R-1413).[31]

The issue raised on direct appeal was addressed in the following manner:

> The State presented evidence that blood found on the rifle was
> type "O." The State then introduced a ten-year-old medical

---

[30] Petitioner asserts in his reply brief:
   [T]he claims [issues T and U] further demonstrate the unconstitutional
   prosecutorial misconduct which pervaded Peoples['] pretrial and trial
   proceedings.

[31] The prosecutor argued to the judge that the state was unable to type the victim's blood
after the discovery of the body because the blood was contaminated. (Trial Record, Vol. 11, R-
1392).

> record from Judy Franklin's obstetrical records to prove that her
> blood type was "O." The appellant claims that the medical record
> was inadmissible because the State did not prove that the typed
> blood sample actually came from Judy Franklin, and that a
> proper chain of custody of the blood sample was not proven. He
> cites *Whetstone v. State*, 407 So. 2d 854 (Ala. Cr. App. 1981).
> We do not agree with the appellant's contention.

510 So. 2d at 570.[32]

The Sixth Amendment's Confrontation Clause, made applicable to the states through

the Fourteenth Amendment, limits the use of hearsay against a criminal defendant. *Ohio v.*

*Roberts*, 448 U.S. 56, 65 (1980). Hearsay statements are admissible, however, only if they

bear adequate "indicia of reliability," such as where the evidence falls within a firmly rooted

hearsay exception or where there has been a showing of particularized guarantees of

trustworthiness. *Id.* at 65-66. *See United States v. Inadi*, 475 U.S. 387, 392-93 (1986). "[A]

statement made in the course of procuring medical services, where the declarant knows that a

false statement may cause misdiagnosis or mistreatment, carries special guarantees of

credibility" and thus, the Confrontation Clause does not require that declarant be found

unavailable before testimony concerning out-of-court statements may be accepted. *White v.*

*Illinois*, 502 U.S. 346, 356 (1992).

The record contains sufficient particularized guarantees of trustworthiness. The

hospital record was prepared ten years before petitioner's trial for the Franklins' murders.

When prepared in 1972, the record had absolutely no significance to petitioner. Rather, the

---

[32] Petitioner did not present a federal constitutional claim on this point in state court, and,
therefore, is arguably barred from raising such a claim here. Respondents conceded this point, rather
than argue it, however, and the court will address the merits of petitioner's claim.

hospital record objectively stated the blood type of a woman about to give birth. The evidence at issue was not a routine medical record but, rather, was an obstetrical record prepared in anticipation of the birth of a child, during which there is always a possibility that additional blood might be necessary for the mother.

In the alternative, even if the admission of the obstetrical record had been a constitutional violation, the respondents have carried their burden of proving the error harmless. In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the United States Supreme Court held that on collateral review, a constitutional claim is subject to the harmless error standard set forth in *Kotteakos v. United States*, 328 U.S. 750 (1946). The question is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 at 637-38 (quoting *Kotteakos*, 328 U.S. at 776). In other words, under the *Kotteakos* test, the petitioner is not entitled to habeas relief unless he establishes that the constitutional claim resulted in "actual prejudice." 507 U.S. at 637. The burden of proving the error harmless remains with the government. *Bonner v. Holt*, 26 F.3d 1081, 1083 (11th Cir. 1994), *cert. denied*, 115 S. Ct. 1328 (1995). Judy Franklin's blood was found on a towel and the rifle, (Trial Record, Vol. 12, R-1424 to R-1428), but hair consistent with her hair and inconsistent with the hair of Paul Franklin, Sr. and Paul Franklin, Jr. was also found on those items. (Trial Record, Vol. 12, R-1455 to R-1456). Furthermore, petitioner confessed to the murders, and that confession was properly admitted into evidence, and petitioner's accomplice testified that petitioner carried Judy Franklin into the woods while carrying the rifle and that she was screaming and then became quiet. (Trial Record, Vol. 6, R-360). The rifle was bent and broken, (Trial Record, Vol. 6, R-354), and the sight elevator was found at the scene

82

where the bodies were discovered, (Trial Record, Vol. 10, R-1053) and Judy Franklin's skull

had been fractured. (Trial Record, Vol. 10, R-1190). In light of the overwhelming evidence

against petitioner, the court is of the opinion that the respondents carried their burden of

proving that the admission of Judy Franklin's obstetrical records to prove her blood type was

harmless error, if any. Thus, for the reasons stated above, petitioner is not entitled to relief on

this claim.

W.    The trial court's instruction on the defendant's failure to testify, which left the
      impression that an adverse inference might be drawn, violated John Peoples's
      constitutional rights to a fair trial and due process.

The trial judge charged the jury, in pertinent part:

> Now there are some other matters of law that the evidence
> brought out depending on what you find the facts to be from the
> evidence that would require your attention. We have a code
> section that provides that on the trial of all indictments,
> complaints, or other criminal proceedings the person on trial shall
> at his own request but not otherwise be a competent witness, and
> his failure to make such request shall not create any presumption
> against him nor be the subject of comment by counsel. This
> statute is to the effect that the Defendant may elect not to testify,
> and if he does so elect, his failure to testify in his own behalf
> shall not create any presumption against him. This gives the
> Defendant a substantive right which you under your oaths are
> bound to respect and uphold. The statute means exactly what it
> says, and it would be highly improper and unjust for a jury to
> disregard this statute in arriving at your verdict.

(Trial Record, Vol. 13, R-1620).

Defense counsel did not object to this portion of the jury charge, (Trial Record, Vol. 13, R-

1629), but petitioner now argues that he did not request the jury instruction, that the

instruction was improperly confusing and suggestive concerning petitioner's failure to testify,

and that the trial court's instruction was not a strong enough admonition in light of the

83

prosecution's voir dire comment regarding petitioner's not testifying and the prosecutor's

summation in which he "hammered away at [petitioner's] inability to 'explain' the prosecutor's

evidence."

This argument was presented on direct appeal and was rejected by the Court of

Criminal Appeals:

> The appellant neither requested nor objected to the above
> instruction, and he now claims that the court erred by giving the
> instruction. Even if he had objected, the giving of the charge
> would not have been reversible error, *Tucker v. State*, 429 So. 2d
> 1165 (Ala. Cr. App. 1983). The failure to give such a charge
> when requested may be reversible error if the substance of the
> charge is not covered in the court's oral charge. *Perry v. State*,
> 368 So. 2d 310 (Ala. 1979); *Jordan v. State*, 392 So. 2d 1230
> (Ala. Cr. App. 1980), *cert. denied*, 392 So. 2d 1233 (Ala.
> 1981). We find nothing wrong with the above instruction.

*Peoples*, 510 So. 2d at 571.

In *Carter v. Kentucky*, 450 U.S. 288, 300 (1981), the United States Supreme Court

held that the Fifth Amendment requires that "a criminal trial judge must give a 'no-adverse-

inference' jury instruction when requested by a defendant to do so." In the present case, the

issue is not that the court did not give such an instruction, but that it did. Federal habeas relief

is available based on jury instruction, however, only if the jury instruction so infected the

entire trial that the resulting conviction violates due process by rendering the trial

fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62 (1991). The trial court instructed

the jury that petitioner's failure to testify did not create any presumption against him. The fact

that the trial court did not specifically mention the Fifth Amendment in his charge does not

render the charge improper. *See Carter*, 450 U.S. at 300; *United States v. Russo*, 796 F.2d

84

1443 (11th Cir. 1986). Further, as noted above, the jurors chosen to serve on the jury did not

hear the prosecutor's comment on voir dire. Moreover, the prosecutor's comments during

closing argument rebuttal were not a comment on petitioner's failure to testify but rather on

the failure of the defense to counter or explain the evidence. (Trial Record, Vol. 12, R-1585).

*See United States v. Knowles*, 66 F.3d 1146, 1163 (11th Cir. 1995) (holding that prosecutor's

statement during closing argument that there was no explanation for defendant's use of a false

name "was not so much a comment on [defendant's] failure to testify, but rather on

[defendant's] *counsel's* failure to counter or explain the false name," and, therefore, the

statement would not necessarily be taken to be a comment on defendant's failure to testify),

*cert. denied*, 116 S. Ct. 1449 (1996); *United States v. Hendrieth*, 922 F.2d 748, 751 (11th

Cir. 1991); *United States v. Watson*, 866 F.2d 381, 386 (11th Cir. 1989). Therefore, the

court concludes that petitioner's trial was not rendered fundamentally unfair by the trial court's

instruction, and petitioner is not entitled to habeas relief on this claim.

> X.  The trial court erred in allowing the prosecutor to question defense witnesses at
> the sentencing hearing about a pending felony charge and some worthless check
> allegations, thus violating John Peoples's rights under the Fifth, Eighth and
> Fourteenth Amendments to the United States Constitution.

Petitioner alleges that the trial court erred in allowing the prosecutor to question

defense character witnesses Willie Ham and Marian Williams at the sentencing hearing as to

whether they had heard that petitioner stole $3250 from Curtis Jackson by selling him a car

that was supposed to be paid for and that defendant stole a dump truck from Ronald Ledbetter.

Further, the prosecutor asked whether they had heard that petitioner had issued worthless

checks to various persons. Petitioner argues that the prosecutor "was allowed to introduce

evidence of unproven felony theft charges and unproven misdemeanor check charges in an
attempt to smear the defendant's reputation and inflame the jury." Petitioner further alleges
that the questioning "undoubtedly led the jury to a fatal misunderstanding of what the
mitigating factor of no prior criminal record actually meant" and "allowed the introduction of
impermissible aggravating factors for the jury's consideration."

Federal courts do not generally sit to correct erroneous evidentiary rulings by state
courts unless the error produces fundamental unfairness. *Cox v. Montgomery*, 718 F.2d 1036,
1038 (11th Cir. 1983); *Shaw v. Boney*, 695 F.2d 528, 530 (11th Cir. 1983). "In order for an
evidentiary ruling to be cognizable in habeas corpus, it must deprive the state court defendant
of fundamental fairness." *Smith v. Wainwright*, 741 F.2d 1248, 1258 (11th Cir. 1984), *cert.
denied*, 470 U.S. 1087 (1985). *See also Thigpen v. Thigpen*, 926 F.2d 1003, 1012 (11th Cir.
1991).

As the Eleventh Circuit has noted, the application of this fundamental fairness standard,

> has been notably one-sided, consistent with the reluctance of
> federal courts to second-guess state evidentiary rulings. This
> court has established a well documented resistance to granting
> relief when a habeas petition challenges a federal claim based
> merely on a state evidentiary ruling.

*Shaw v. Boney*, 695 F.2d at 530 (citation omitted). "[F]ederal courts are properly reluctant to
second-guess state court evidentiary rulings on habeas review and rarely grant relief on the
basis of such rulings." *Demps v. Wainwright*, 805 F.2d 1426, 1430 (11th Cir. 1986), *cert.
denied*, 484 U.S. 873 (1987) (citation omitted).

The Alabama Court of Criminal Appeals held that the cross-examination of petitioner's
character witnesses was proper to test their credibility by asking whether they knew of

petitioner's involvement in other car thefts and many worthless check charges. *Peoples*, 510
So. 2d at 571.

The defense elicited testimony from witnesses Ham and Williams of petitioner's general
good deeds as well as his non-violent nature. Ham testified that petitioner was an active
member of the PTA and was one of the "key people" that worked on a playground project.
(Trial Record, Vol. 13, R-1644). She further testified that she "only [knew] John as a very
gentle and kind person." (Trial Record, Vol. 13, R-1645). In response to the defense
questioning of whether petitioner was "a good member of the community," Ms. Ham
responded "absolutely." (Trial Record, Vol. 13, R-1645). Ms. Williams testified that while
petitioner was in school, he was a substitute bus driver; that he was a good student in school;
that he "[n]ever was in any trouble in school." (Trial Record, Vol. 13, R-1651). In response
to defense attorney's question: "Have you ever known [petitioner] to be involved in anything
of that nature [i.e., these offenses] up to this time?," she replied "No, sir." (Trial Record,
Vol. 13, R-1651).

The prosecution then cross-examined Ms. Ham as to whether she had heard that
petitioner stole $3,250.00 from Curtis Jackson, and defense counsel objected on relevancy
grounds. The prosecutor responded: "she's talked about his good deeds and everything. I'm
just wanting to inquire in as to what she's heard." (Trial Record, Vol. 13, R-1646). When
defense counsel objected to a similar question posed to Ms. Williams, the following exchange
occurred:

> Q:    Now, Your Honor, there's a case pending, and she's saying she's never
>       heard him being involved in anything of this nature. This is in dealing
>       with stealing a Corvette automobile.

87

        Mr. Short:    Anything of this nature is what we are dealing with here.

        Q:        That's one of the elements of it, Your Honor. We think we are entitled to go into it.

(Trial Record, Vol. 13, R-1653). The questioning was designed to test the reliability or

credibility of the character witnesses. *Frazier v. State*, 56 Ala. App. 166, 172, 320 So. 2d 99,

104 (Ala. Cr. App. 1975). *See also United States v. Adair*, 951 F.2d 316, 319 (11th Cir.

1992). As such, it was proper cross-examination, and petitioner's claim is without merit.

Thus, petitioner is not entitled to habeas relief on this claim.

    Y.    The trial court's findings of aggravating circumstances violated John Peoples's rights pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

Petitioner argues that under Alabama law an element of capital murder, such as

robbery, burglary or kidnaping, cannot also be an aggravating circumstance. This argument

does not entitle petitioner to federal habeas relief as he is complaining only of a violation of

state law. *Engle v. Isaac*, 456 U.S. 107 (1982).[33]

Petitioner further argues that the trial court's instruction on aggravation did not comply

with state or federal law. In support of this contention petitioner relies on *Maynard v.*

*Cartwright*, 486 U.S. 356 (1988) in which the United States Supreme Court held that "the

language of the Oklahoma aggravating circumstance at issue -- 'especially heinous, atrocious,

or cruel'" -- without further explanation, was over broad. 486 U.S. at 363-64.

_____

    [33] Further, the court notes that the practice of counting an element of capital murder as an aggravating circumstance has been upheld by the Alabama courts. *See Burton v. State*, 651 So. 2d 641, 657 (Ala. Cr. App. 1993), *aff'd,* 651 So. 2d 659 (Ala. 1994), *cert. denied,* 115 S. Ct. 1973 (1995).

In the instant case, however, unlike in *Maynard*, the trial court instructed the jury on

the meaning of the words "heinous," "atrocious," and "cruel:"

> The term "heinous" means extremely wicked or shockingly evil.
> The term "atrocious" means outrageously wicked and violent.
> The term "cruel" means designed to inflict a high degree of pain
> with utter indifference to or even enjoyment of the suffering of
> others. What is intended to be included in this aggravating
> circumstance is those cases where the actual commission of the
> capital offense is accompanied by such additional acts as to set
> the crime apart from the norm of capital offenses. For a capital
> offense to be especially heinous or atrocious, any brutality which
> is involved in it must exceed that which is normally present in
> any capital offense. For a capital offense to be especially cruel,
> it must be a conscienceless or pitiless crime which is
> unnecessarily torturous to the victim. All capital offenses are
> heinous, atrocious and cruel to some extent. What is intended to
> be covered by this aggravating circumstance is only those cases in
> which the degree of heinousness, atrociousness or cruelty exceeds
> that which will always exist when a capital offense is committed.

(Trial Record, Vol. 13, R-1679 to R-1680).

As noted above, a claim based on a violation of state law does not entitle petitioner to

federal habeas relief. In addition, the findings of the jury and the sentencing court are

supported by the record. "A state court's finding of an aggravating circumstance in a

particular case … is arbitrary or capricious [in violation of the Eighth Amendment] if and only

if no reasonable sentencer could have so concluded." *Lewis v. Jeffers*, 497 U.S. 764, 783

(1990); *Lusk v. Singletary*, 965 F.2d 946, 952 (11th Cir. 1992), *modified in part on other*

*grounds*, 976 F.2d 631 (11th Cir. 1992), *cert. denied*, 508 U.S. 920 (1993).

In the Finding of Fact by the Court From the Evidence and Testimony Presented during

the Trial Phase of the Trial Summarizing the Crime and the Defendant's Participation Therein

(Trial Record, Vol. 1, at 159), the trial court recounted the events of the night of July 6, 1983,

89

based on its findings of fact, and concluded that: "The conduct by the defendant constituted a brutal, aggravated, merciless and intentional killing of a man, his wife and their ten year old son." (*See* Trial Record, Vol. 1, at 159-60).

In the Findings of Fact in Regard to the Punishment Phase of the Trial, (Trial Record, Vol. 1, at 162), the trial court did not repeat its findings of fact surrounding the crime, but it did repeat the conclusion, "that the conduct of the defendant constituted a brutal, aggravated, merciless, and intentional killing of a man, his wife, and their 10 year old child." (Trial Record, Vol. 1, at 162). The court further stated that "the recommendation of the jury as to the punishment to be imposed was fully justified by the facts and circumstances of the case and the aggravating circumstances outweighed the mitigating circumstances proved by the defendant." (Trial Record, Vol. 1, at 162-163).

In the Consideration, Findings and Determination of Sentence as Required by Section 13A-5-47(b), (Trial Record, Vol. 1, at 164), the court found that the only mitigating circumstance was petitioner's absence of a prior criminal record, (Trial Record, Vol. 1, at 165), and that two aggravating circumstances existed:

> (4) The Capital offense was committed while the defendant was engaged or was an accomplice to the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery, burglary and kidnaping;

> \* \* \*

> (8) The Capital offense was especially heinous, atrocious, or cruel compared to other capital offenses.

90

(Trial Record, Vol. 1, at 164-65).  The court further found that the aggravating circumstances far outweighed the mitigating circumstances.  (Trial Record, Vol. 1, at 165).

The facts set forth in the Findings of Fact From the Evidence and Testimony during the Trial Phase are entitled to a presumption of correctness.  *See Lusk*, 965 F.2d at 952.  The court, therefore, holds that a reasonable sentencer could properly find that the crime committed by petitioner was especially heinous, atrocious or cruel compared to other capital offenses.  Petitioner is, thus, not entitled to habeas relief on this claim.

Z.    The jury's sequestration and its deliberations were unconstitutionally tainted.

In the amended petition petitioner alleged:

> The jury's sequestration and its deliberations were
> unconstitutionally tainted and the verdicts thereby fatally
> defective.  The prosecutor admitted to the trial court his personal
> knowledge of the jury's intimate sequestration and deliberations,
> noting that the jury "prayed for guidance."  Somehow, the jury's
> sequestration and deliberations were impermissibly violated.
> John Peoples's resulting convictions and sentence are
> constitutionally defective.

(Amended petition, p.76).

In the reply brief, petitioner refers to the record as support for this claim.  (Trial Record, Vol. 13, R-1719).  Respondents argue that this claim is procedurally barred from federal review as it was not presented to the state courts.  Petitioner has not responded to this defense.

91

The court concludes that this claim is procedurally barred from federal review due to petitioner's failure to present this claim in state court,[34] and his failure to show cause or prejudice or the applicability of the fundamental miscarriage of justice exception.

Based on the foregoing the petition for writ of habeas corpus is due to be **DENIED**. A final judgment consistent with this Memorandum Opinion will be entered simultaneously herewith.

**DONE** this 30th day of September, 1998.

SHARON LOVELACE BLACKBURN
United States District Judge

---

[34] *See* note 8, *supra*, and accompanying text.

92